ESTATE of Jack F. CHRYSLER, Edith B. Carr, John W. Drye, Jr. and Manufacturers Hanover Trust Company, Executors, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 317, Docket 30208.

United States Court of Appeals Second Circuit.

Argued May 3, 1966.

Decided June 2, 1966.

Hewitt A. Conway, New York City (John W. Drye, Jr., Arthur W. Siegrist, and David A. Ross, New York City, with him on the brief), for petitioner.

Loring W. Post, Washington, D. C. (Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson and Melva M. Gran-

ey, Washington, D. C., on the brief), for respondent.

Before LUMBARD, Chief Judge, MOORE and FEINBERG, Circuit Judges.

MOORE, Circuit Judge:

Petitioner is the Estate of Jack F. Chrysler, Deceased. Decedent died on November 7, 1958, a resident of New York, survived by his wife Edith (now Edith B. Carr) and two children, Helen and Jack, Jr.

During his lifetime, decedent deposited funds belonging to him in a checking account designated "Account No. 1—Jack F. Chrysler or Edith B. Chrysler as joint tenants with right of survivorship and not as tenants in common." Decedent also transferred certain securities to his name and that of his wife, or to his name and that of his daughter Helen, as joint tenants with right of survivorship. All these transactions were recorded by the decedent in a ledger which he kept at his office, inscribed "Helen F. Chrysler—Personal." Decedent never used any of the funds recorded in these transactions, nor their proceeds, for his own benefit. The transfers recorded in this ledger after 1955 were solely transfers of cash, not of securities.

From time to time decedent used the checking account described above to purchase securities, which were registered in the name of decedent and his wife as joint tenants with right of survivorship until 1956. After the enactment in 1956 of the New York statute with respect to gifts of securities to minors, certain of the securities were registered in the name of Jack F. Chrysler, as custodian for Helen F. Chrysler, a minor, under Article 8–A of the Personal Property Law of New York, McKinney's Consol. Laws, c. 41. The securities so registered were kept in a separate safe deposit box, held in the name of decedent and his wife as joint tenants. No other securities were kept in the box. From time to time, some of the securities were sold, the proceeds deposited in the checking account described above, and new securities purchased.

Income tax returns with respect to the income from all of the property described above were filed for the daughter, Helen F. Chrysler, each year, and the taxes, if any, were paid out of the property.

What decedent did for Helen, he also did for his son, Jack, though using a different checking account, a different ledger (inscribed "Jack F. Chrysler, Jr. —Personal"), a different safety deposit box, and so forth.

Decedent included each of the original transfers set forth in his ledgers in annual gift tax returns.

The Commissioner determined an estate tax deficiency on the grounds that the property described above was includable in decedent's gross estate. The Tax Court upheld the position of the Commissioner. The amount of the estate tax deficiency under the decision of the Tax Court was computed to be $74,770.09. From this decision, the estate petitions for review.

1. *The Property Registered in the Names of Decedent and Another.*

Section 2040 of the Internal Revenue Code of 1954 provides that:

"The value of the gross estate shall include the value of all property * * * to the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth * * *."

There is no dispute but that all of the property in question initially came from funds of the decedent. The Commissioner maintains that § 2040 applies by its terms to the property held by "Jack

**510**

F. Chrysler or Helen F. Chrysler," "Jack F. Chrysler or Jack F. Chrysler, Jr.," and "Jack F. Chrysler and Edith B. Chrysler, as joint tenants with right of survivorship and not as tenants in common."

■ However, § 2040 is concerned only with *beneficial interests possessed by a decedent as a joint tenant.* It is apparent from the facts of this case that decedent's interest as a joint tenant was purely nominal. The joint tenancies were simply devices for making completed gifts to minors without going through the cumbersome machinery of guardianship or formal trusts which otherwise would have been necessary prior to the enactment of the New York custodianship statute. See Rogers, *Some Practical Considerations in Gifts to Minors,* 20 Fordham L.Rev. 233 (1951); Note, *Recent Legislation to Facilitate Gifts of Securities to Minors,* 69 Harv.L. Rev. 1476 (1956). Contrast Estate of Oliver B. Avery, 40 T.C. 392 (1963), in which the children were not minors at the time of transfer, so that there was no reason to suppose that the joint tenancy interest retained by the father was nominal rather than beneficial. We find convincing evidence of decedent's intention to relinquish all beneficial interest in the property transferred, including the right of survivorship, in favor of his minor children: in decedent's careful records in separate ledgers of the transfers for each child; in the reporting of each transfer as a completed gift; in the reporting of income from the property transferred as income of the children; and in the fact that decedent never used any of the funds transferred for his own benefit. With such extrinsic proofs, it seems likely that if the children had died first, the property would have been part of their estates. See Silverman v. McGinnes, 259 F.2d 731 (3d Cir. 1958) (father had delivered bonds, registered to himself and his minor children as co-owners, to his wife, stating that the bonds were gifts to the children; held, the father, though nominally a joint tenant, had effectively conveyed away his

right of survivorship, so that the bonds were not includable in his estate under the predecessor of § 2040).

■ The absence of any beneficial interest of the decedent in the property of which he was nominally a joint tenant also precludes the application of § 2033 to require the inclusion of any part of the property in decedent's estate, since § 2033 is concerned only with property "beneficially owned by the decedent at the time of his death. * * *" Treas. Reg. § 20.2033–1(a) (1958).

2. *Property Held in the Name of the Decedent as Custodian under the New York Gift of Securities to Minors Act.*

Article 8–A of the New York Personal Property Law, as enacted in 1956, N.Y. Sess.Laws 1956, c. 35, and as it remained until its repeal and replacement in 1959 by the present Article 8–A, N.Y. Sess.Laws 1959, c. 233, provided in Section 266–a that the custodian:

> "shall hold, manage, invest and reinvest the property held by him as custodian, including any unexpended income therefrom and the proceeds of sale thereof * * * He shall collect the income therefrom and apply so much or the whole thereof and so much or the whole of the other property held by him as custodian as he may deem advisable for the support, maintenance, education and benefit of the minor."

The Commissioner contends, and the Tax Court held, that the powers of the decedent under this section meant that he could use income from the property held as custodian to discharge his legal obligation to support his minor children, and that therefore he had retained a life estate in the property sufficient to warrant its inclusion in his gross estate under § 2036(a). The Commissioner also contends, and the Tax Court also held, that the statute gave the decedent power "to alter, amend, revoke, or terminate" the enjoyment of the custodial property, so that the property should be included under § 2038.

We do not find it necessary to resolve either issue.

▪ The securities, which were registered in the name of the decedent as custodian under the New York Gift of Securities to Minors Act, were not purchased with decedent's own funds; nor were they securities which decedent had previously owned outright and had later transferred to himself as custodian for his minor children. Decedent made no transfers of securities to his children after 1955. Instead, the securities registered in the name of decedent as custodian for his children were purchased with funds from three sources: the proceeds of securities previously held in nominal joint tenancy; cash which had been in checking accounts of which decedent was nominally a joint tenant with his wife since before the enactment of the New York custodianship statute in 1956; and cash which decedent transferred to the same checking accounts after the enactment of the custodianship statute.

We have already seen that decedent relinquished all beneficial interest in each of these three sources of funds, and was acting with respect to them in purely a fiduciary capacity. Decedent could not have used funds from any of these sources to discharge his own obligations to support his minor children, and so cannot be said to have retained a life estate under § 2036. The property was the children's, not his. If it is at best doubtful whether a grantor-parent-trustee in New York can apply trust property to discharge his obligations of support even when the trust agreement provides that income can be used for the support of the children, see Cushman v. Commissioner, 153 F.2d 510, 514–515 (2d Cir. 1946); Matter of Martin's Will, 32 Misc. 2d 555, 221 N.Y.S.2d 667 (Surr.Ct.1961); Matter of Sandgren's Estate, 160 Misc. 784, 290 N.Y.S. 660 (Surr.Ct.1936), still less would such conduct be permitted where no such broad reserved power is explicit in any trust agreement, and where the circumstances surrounding the transfer indicate that no such rights were reserved by the transferor.

Nor did decedent retain the power to alter or terminate the children's enjoyment of the property transferred to them, so as to require the inclusion of the property transferred in decedent's gross estate under § 2038. The circumstances of the transfers—the careful keeping of ledgers, the reporting of each transfer as a gift, the absence of any use of the funds for the father's benefit—makes clear that the property was to be the children's, to be preserved until their majority.

In short, decedent had relinquished to his children all beneficial interest in the three sources of funds with which securities registered under the custodianship statute were purchased. Decedent reserved neither a life estate nor the power to terminate or alter enjoyment. He could not increase his powers over property previously transferred without the consent of the children. See, e.g., Curtis A. Herberts, 10 T.C. 1053, 1063 (1948).; Lawrence Miller, 2 T.C. 285, 288 (1943). For this reason we need not decide whether the 1956 New York custodianship statute gives such broad powers to a custodian as to require the inclusion of the custodial property in his gross estate under §§ 2036 and 2038; since even if the statute gives such powers, decedent lacked the authority to assert them over property or the fruits of property previously held by his children free of comparable restrictions.

We conclude that the securities registered in the name of decedent as custodian for his minor children should not have been included in his gross estate and, therefore, that the decision of the Tax Court should be reversed insofar as there was a determination that there is a deficiency in estate tax due from petitioner in the amount of $74,770.09.