DOROTHY STUIT, TRANSFEREE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ESTATE OF JENNIE VANDERPOEL, DECEASED, DOROTHY STUIT, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2187–68, 3570–68.   Filed March 24, 1970.

*R. Douglas Campbell*, for the petitioners.
*James F. Hanley, Jr.*, for the respondent.

### OPINION

FAY, *Judge:* Respondent determined a deficiency of $10,025.84 in the Federal estate tax of the Estate of Jennie Vanderpoel. The only issue remaining for decision is whether certain shares of stock conveyed by decedent in two separate transfers to herself as custodian for two grandsons under the Illinois Uniform Gifts to Minors Act are includable in her gross estate.

All of the facts have been stipulated. The stipulation of facts and the exhibit attached thereto are incorporated herein by this reference.

Jennie Vanderpoel (Jennie) died testate on October 16, 1964, at the age of 66. Her will was submitted to probate in the Probate Court of Douglas County, Omaha, Nebr. Dorothy Stuit (Dorothy), her daughter, was appointed executrix of her estate. Dorothy resides in Westchester, Ill., and resided there at the time the petitions in these proceedings were filed.

Dorothy as executrix filed an estate tax return for Jennie's estate on September 2, 1965, with the district director of internal revenue, Omaha, Nebr.

Dorothy is liable as a transferee of the property of the Estate of Jennie Vanderpoel, deceased, for the deficiency in estate tax of the Estate of Jennie Vanderpoel, deceased, as finally determined by this Court, and the parties have so stipulated.

On July 26, 1961, Jennie had 150 of her shares of the common stock of A.T. & T. transferred to herself as custodian for her grandson, Van Thomas Stuit. These shares were registered as follows: Mrs. Jennie Vanderpoel, Custodian Van Thomas Stuit, Uniform Gifts to Minors Act Illinois. On July 26, 1961, Jennie had an additional 150 of her shares of the common stock of A.T. & T. transferred to herself as custodian for her grandson, Harold J. Stuit.

These shares were registered as follows: Mrs. Jennie Vanderpoel, Custodian Harold J. Stuit, Uniform Gifts to Minors Act Illinois. On June 1, 1964, the common stock of A.T. & T. was split 2 for 1, and additional certificates to reflect this split were registered as noted above.

On October 16, 1964, the date of Jennie's death, the fair market value of the shares of A.T. & T. transferred to herself as custodian for her grandsons, including the additional certificates representing the 2 for 1 split of June 1, 1964, was $41,100. On October 16, 1964, Jennie's grandsons, Harold J. Stuit and Van Thomas Stuit, were aged 19 and 16, respectively.

The Federal estate tax return for the Estate of Jennie Vanderpoel did not include in the value of the gross estate the shares of A.T. & T. transferred to the aforesaid custodianships. Respondent has determined that such shares are includable in decedent's gross estate.

The sole issue remaining for decision is whether certain shares of stock which decedent transferred in two separate transfers to herself as custodian [1] for her two grandsons under the Illinois Uniform Gifts to Minors Act are includable in her gross estate.

We have previously considered the same issue in *Estate of Jack F. Chrysler*, 44 T.C. 55 (1965), revd. 361 F. 2d 508 (C.A. 2, 1966).[2] In that case decedent purchased securities which he transferred to himself as custodian for his minor daughter. We held on two alternative grounds that the securities were includable in his gross estate. Our first reason was that the decedent had a legal obligation to support his daughter and as custodian he retained the right to use the income from the custodial property to discharge his legal obligation to support her. Therefore, the value of the securities was includable in his gross estate under section 2036(a).[3] Alternatively, we held the

---

[1] Respondent recognizes on brief that the custodial property would not have been included in the decedent's estate if she had appointed another person as custodian. This fact is further recognized by the commissioners who drafted the Uniform Act. They comment. "It is undesirable for a donor to act as custodian for his own gift under either the Model or the Uniform Act." 9B Uniform Laws Ann. (1967 Supp. p. 28).

[2] *Jack F. Chrysler*, 44 T.C. 55 (1965), revd. 361 F. 2d 508 (C.A. 2, 1966), dealt with the New York version of the Model Gifts of Securities to Minors Act. The instant case deals with the Illinois version of the Uniform Gifts to Minors Act. Respondent's position is that the Federal estate tax consequences under the two Acts are the same. Rev. Rul. 59–357, 1959–2 C.B. 212. Petitioners do not attempt to distinguish the *Chrysler* case on the grounds it related to the Model Act rather than the Uniform Act..

[3] All references to "section" are to the Internal Revenue Code of 1954.

Sec. 2036(a) provides:

SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer * * *, by trust or otherwise, under which he has retained for his life * * *

(1) the possession or enjoyment of, or the right to the income from, the property, or

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

property was includable in the decedent's gross estate under section 2038(a)[4] since as custodian he had the right as well as the power to pay over income and principal to his daughter at any time and thus "terminate" the custodial arrangement.

The Court of Appeals for the Second Circuit reversed our decision. *Estate of Chrysler* v. *Commissioner*, 361 F. 2d 508 (C.A. 2, 1966). The Second Circuit did not find it necessary to reach the question whether the powers held by the decedent as custodian brought the property under the purview of section 2036(a) or 2038. Instead, the basis of its holding was that the securities had been held by the children prior to the custodianship arrangement and so there was never a "transfer" by the decedent as is required by sections 2036 and 2038.

We now affirm our position that where one transfers property to oneself as custodian under the Model or Uniform Acts he retains the power to "terminate" the custodial arrangement within the meaning of section 2038(a)(1). Notwithstanding petitioners' arguments to the contrary, we think our reliance in the *Chrysler* case on *Commissioner* v. *Estate of Holmes*, 326 U.S. 480 (1946), and *Lober* v. *United States*, 346 U.S. 335 (1953), was correct. Also see our more recent holding in *Estate of Russell Harrison Varian*, 47 T.C. 34 (1966), affd. 396 F. 2d 753 (C.A. 9, 1968), certiorari denied 393 U.S. 962 (1968), concerning a *trustee* with substantially the same powers as the case herein.

Under section 534(b) of the Illinois statute,[5] the decedent as custodian had the power to distribute as much custodial property as she deemed advisable for her grandchildren's "benefit" in addition to their "support, maintenance, [and] education." Petitioners contend that the word "benefit" provides as much an external standard

---

[4] Sec. 2038(a)(1) provides:

SEC. 2038. REVOCABLE TRANSFERS.

(a) IN GENERAL.—The value of the gross estate shall include the value of all property * * *—

(1) TRANSFERS AFTER JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death.

[5] Ill. Ann. Stat. ch. 3, sec. 534(b) (Smith-Hurd), provides:

"(b) The custodian shall pay over to the minor for expenditure by him, or expend for the minor's benefit, so much of or all the custodial property as the custodian deems advisable for the support, maintenance, education and benefit of the minor in the manner, at the time or times, and to the extent that the custodian in his discretion deems suitable and proper, with or without court order, with or without regard to the duty of himself or of any other person to support the minor or his ability to do so, and with or without regard to any other income or property of the minor which may be applicable or available for any such purpose."

limiting the custodian's powers as do the words "support, maintenance, [and] education." It follows, say petitioners, that the custodial property is not properly includable in decedent's gross estate under section 2038(a). *Jennings* v. *Smith*, 161 F. 2d 74 (C.A. 2, 1947). For several reasons we do not think the word "benefit" provides an external standard sufficient to enable a court of equity to limit the custodian's power to distribute custodial property and thereby prematurely "terminate" the custodianship.

First, the word "benefit" should not be read together with the words "support, maintenance, [and] education" to which it is juxtaposed in paragraph (b) of section 534 of the Illinois statute. The doctrine of ejusdem generis is not applicable. This conclusion is apparent from a reading of paragraph (c) of section 534 of the Illinois statute.[6] Paragraph (c) states that a custodian may be compelled to expend custodial property for the minor's "support, maintenance or education." The purpose of the provisions is to assure the minor a minimum standard of living. The word "benefit" was intentionally omitted. To be consistent, in also reading paragraph (b) the word "benefit" must be recognized as having a meaning separate from the words "support, maintenance, [and] education."

Second, as an independent word "benefit" does not create an external standard. Petitioners state on brief, and we agree, that "benefit" is interchangeable or synonymous with "happiness." The word "happiness," standing alone, has long been held not to create an external standard. *Merchants Bank* v. *Commissioner*, 320 U.S. 256 (1943); *United States* v. *Commercial National Bank of Kansas City*, 404 F. 2d 927 (C.A. 10, 1968), certiorari denied 393 U.S. 1000 (1968).

Third, we have given considerable weight to the fact that the decedent created two separate custodianships with each having only one beneficiary. It seems almost senseless to speak, under such circumstances, of an external standard. Where there is only one beneficiary and that beneficiary will eventually receive the entire custodial property at age 21, it is unlikely that a court of equity would ever be asked to limit the custodian's power to distribute custodial property to the minor. In other words, it is improbable that the custodian would ever be judicially restrained from prematurely terminating the custodianship by distributing all the custodial property.

Two Courts of Appeals as well as this Court have held on occasion that either the word "benefit" or "happiness" is an external standard.

---

[6] Par. (c) provides:

"(c) The court, on the petition of a parent or guardian of the minor or of the minor, if he has attained the age of fourteen years, may order the custodian to pay over to the minor for expenditure by him or to expend so much of or all the custodial property as is necessary for the minor's support, maintenance or education."

*Estate of Edward E. Ford*, 53 T.C. 114 (1969); *United States* v. *Powell*, 307 F. 2d 821 (C.A. 10, 1962); *Salisbury* v. *United States*, 377 F. 2d 700 (C.A. 2, 1967). In the *Ford* case, the Court noted the repeated use of the word "need" in the trust instrument. We concluded that the decedent did not intend the trustee to invade principal for "happiness" unless the trustee initially determined a "need" for such an invasion. For that reason the word "happiness" must be deemed qualified by the more limiting word "need." The Tenth Circuit in *Powell* looked to the four corners of the trust instrument to determine the meaning of the word "happiness." The trust instrument indicated, said the court, that the power of the settlor-trustee to invade corpus for "happiness" should be exercised with restraint. The Tenth Circuit concluded that "happiness" was to be considered in that case synonymous with the words "welfare" and "comfort" appearing in the same clause of the instrument. The Second Circuit in *Salisbury* also looked to the four corners of the instrument to determine consistent with the decedent's intentions the meaning of the word "benefit." The court held in the context of the instrument that the power of the trustee to invade corpus for the income beneficiary's "benefit" was fixed by an ascertainable standard.

The foregoing decisions are distinguishable in two respects from the case at bar. First, in the instant case we are not construing the intentions of a single person. We are construing, instead, the legislative intent of a uniform act. Second, the foregoing decisions diminished the independent significance of the words "benefit" or "happiness" to make such words consistent with the overall context of the instrument. In the instant case, as already discussed, we think the draftsmen of the Uniform Act intended the word "benefit" to have meaning apart from the more limiting words appearing in section 534(b) of the Illinois statute.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*