ESTATE OF ARIS CARPOUSIS, Deceased, MARY CARPOUSIS, Administratrix, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Carpousis v. Commissioner
Docket No. 4689-71
United States Tax Court
T.C. Memo 1974-258; 1974 Tax Ct. Memo LEXIS 60; 33 T.C.M. (CCH) 1143; T.C.M. (RIA) 74258; September 24, 1974, Filed. Nicholas Kapnistos, for the petitioner. Gregory A. Robinson, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a $77,422.08 deficiency in the Federal estate tax for the Estate of Aris Carpousis. The issues remaining to be decided are: 1. To what extent, if any, did decedent's widow contribute toward the purchase of certain real property held by decedent and his spouse as joint tenants; 2. Whether the election to use the alternate valuation date was effective when made on a return filed after the expiration *62 of a six-month filing extension; 3. Whether decedent's funds, deposited in savings accounts of which decedent was trustee for the benefit of his minor children at the time of his death, are includible in decedent's gross estate; and 4. Whether the value of shares of stock, which decedent purchased with his own funds, taking title in himself as custodian for his minor children pursuant to the District of Columbia Uniform Gifts to Minors Act, is includible in his gross estate. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Aris Carpousis, who was a resident of the District of Columbia, died intestate on April 14, 1966. Decedent was survived by his widow, Mary Carpousis, and six minor children. Mary Carpousis was appointed administratrix of his estate on April 26, 1966. She was a resident of the District of Columbia when the petition herein was filed. The estate tax return for the estate of the decedent was due to be filed on or before July 14, 1967. Decedent's estate requested and respondent granted a six-month extension of time for filing the estate tax return.On January 15, 1968, the due date for filing under the extension of time, decedent's *63 estate requested a further extension of time for filing the estate tax return. This request was denied. The estate tax return was filed on April 17, 1968. Both extensions of time for filing the estate tax return was sought because decedent's bookkeeper had been physically unable to compile the data necessary for preparing the return. In 1967 the bookkeeper was 72 years old and ill with terminal cancer. In the estate tax return filed on April 17, 1968, decedent's administratrix elected the alternate valuation date for valuing assets. In the statutory notice of deficiency respondent determined that such election was invalid because made on a tardy return. Decedent was a doctor of medicine. He employed both a bookkeeper and nurse and employed his wife to assist them. Since he began practicing medicine in 1950, decedent's wife worked with him on a part-time basis, three to four hours a day, five days a week. In 1957 decedent and his wife purchased a parcel of improved real estate in Bethesda, Maryland, taking title as joint tenants. Decedent's wife contributed one-sixth of the purchase price of the property. The fair market value of the property on decedent's death was *64 $29,371.98. No part of this property was included in decedent's gross estate as reported on the Federal estate tax return. Respondent determined that the entire value of the property was includible in decedent's gross estate. Until his death in April, 1965, decedent's father, Agis Carpousis, resided in an apartment connected to decedent's office. He was retired and his only income was from a pension, social security payments, and interest on government bonds. Decedent's father took care of decedent's financial matters, such as paying bills, cashing checks and making bank deposits. On May 4, 1961, decedent's father, acting on decedent's behalf, established six separate savings accounts with Interstate Building Association of Washington D.C. Each account was entitled: [Name of one of decedent's six children], Minor U/C Mr. Agis Carpousis and/or Mr. Aris Carpousis. Both decedent and his father signed the signature cards for these accounts. Decedent could have withdrawn money from these accounts on his signature alone. On October 30, 1962, decedent's father, acting on behalf of decedent, established six separate savings accounts with Republic Savings and Loan Association *65 of Washington, D.C. Each account was entitled: Mr. Agis Carpousis and/or Mr. Aris Carpousis Trustee for [name of one of decedent's six children]. Decedent's father signed the signature cards but decedent had not signed them at the time of his death. However, decedent had the right to withdraw funds from these accounts on his signature alone upon satisfactorily identifying himself to be Aris Carpousis. Decedent contributed all monies deposited to the twelve described savings accounts. Decedent's father had possession of the passbooks for the twelve accounts until his death, whereupon they became the sole property of the decedent. On February 4, 1966, decedent purchased 5,000 shares of Manhattan Fund, Inc., a mutual fund. Title to these shares was registered in decedent's name as custodian for his six children under the District of Columbia Uniform Gifts to Minors Act. On the date of his death, decedent was trustee or custodian of the following bank accounts and mutual fund shares: Name of Child
Interstate Building Asso.
Republic Savings & Loan
Manhattan Fund
Total Ferne
$ 10,549.18
$ 7,700.93
$ 9,163.00
$ 27,413.11
Pamela
10,549.18
7,700.93
9,163.00
27,413.11
Aris, Jr.
10,549.18
7,700.93
9,185.00
27,435.11
Dean
10,549.18
7,700.93
9,163.00
27,413.11
Katherine
10,549.18
7,700.94
9,163.00
27,413.12
Gregory 10,549.18
7,701.06
9,163.00
27,413.24
TOTAL
$ 63,295.08
$ 46,205.72
$ 55,000.00
$ 164,500.80
*66 The administratrix did not include any of the above amounts in decedent's gross estate. Respondent determined that all were so includible. OPINION 1. Jointly Owned Property. The administratrix contends that only one-half of the jointly-owned Bethesda, Maryland real property is includible in decedent's gross estate because decedent's spouse provided one-half of the purchase price from her separate funds. Section 2040[1] provides in effect that the decedent's gross estate includes the entire value of the property held by the decedent and any other person as joint tenants, except that proportionate part, if any, attributable to the purchase price furnished by the surviving party. See section 20.2040-1(a) (2) and (c) (1) through (3), Estate Tax Regs. Respondent contends that decedent's widow has not shown that she contributed any amount to the purchase of the property, and therefore the entire property is includible in decedent's gross estate. Decedent's widow earned *67 a small income each year from decedent for services performed in connection with his medical practice. She testified she contributed some of the money to the purchase price of the Bethesda, Maryland property. Although she presented no corroborating documentary evidence or testimony, we find her testimony believable. Under the circumstances, we have found as a fact she contributed one-sixth of the purchase price of the realty. Cohan v. Commissioner, 39 F.2d 540 (C.A. 2, 1930). Therefore, one-sixth of the value at the date of death ($29,371.98) or $4,895.33 is not includible in decedent's gross estate. 2. Alternate Valuation Date. The administratrix claims she is entitled to use the alternate valuation date elected on the estate tax return. Respondent contends that the election is invalid because made on an untimely return. We agree with respondent. Section 2032, as in effect in 1966, provided that assets in the gross estate may be valued as of one year after the decedent's death, instead of the date of death, if the administrator so elects on an estate tax return *68 filed within the time prescribed by law or before the expiration of any extension of time granted for filing of the return. Section 20.2032-1(b) (2), Estate Tax Regs., provides that in no case may the election be exercised, or a previous election changed, after the expiration of any extension of time granted for filing the return under section 6081. Section 6081(a) permits respondent to grant an extension of time for filing which, except in the case of a taxpayer who is abroad, may not exceed six months. The administratrix's election to use the alternate valuation date in this case is accordingly invalid because made on a return filed after the expiration of the six-months extension of time granted by respondent. The administratrix's claim that the late filing of the return resulted from causes beyond her control, namely the age and illness of decedent's bookkeeper, whether or not correct, cannot assist her. It is immaterial why the return was filed late.See Estate of Johanna Ryan, 62 T.C. 4 (1974); Estate of Frederick L. Flinchbaugh, 1 T.C. 653 (1943); Regs. 20.2032-1(b). 3. Savings Accounts. The administratrix claims that the twelve savings *69 accounts, of which decedent was trustee for the benefit of his minor children, were not includible in decedent's gross estate because decedent never exercised any control over them or received any of the income therefrom. Respondent asserts they are includible in decedent's gross estate because at the time of the decedent's death, he possessed the right to revoke the trusts. We agree with respondent. Section 2038(a) (1) provides that, except in the case of a bona fide sale for full and adequate consideration, the gross estate includes the value of property transferred by decedent if the enjoyment of the property transferred was subject at the time of decedent's death to any change through the exercise of a power possessed by decedent to alter, amend, revoke or terminate. Decedent and his father were joint trustees of these "Totten trusts" until the death of decedent's father, whereupon decedent became and remained sole trustee until his death. These trusts were revocable. D.C. Code, Ann. Section *70 26-204, in effect both when the trust accounts were opened and at the time of decedent's death, provides: § 26-204. Payment of trust accounts on death of trustee. Whenever a deposit, savings account, or share account, which is in form in trust for another, shall be made or held by any person in any bank, trust company, savings and loan association, building association, building and loan association, or Federal savings and loan association, doing business in the District of Columbia, and no other or further notice of the existence and terms of a legal and valid trust shall have been given in writing to such bank, trust company, or other association, such deposit, savings account, or share account, or any part thereof, together with the dividends, or interest thereon, may, in the event of the death of the trustee, be paid to the person for whom such deposit, savings account, or share account was made or held, or to his legal representative. Although we have found no District of Columbia cases construing this provision, this Court has previously construed a New Jersey statute identical in all material respects to the District of Columbia statute. In Estate of Michael A. Doyle, 32 T.C. 1209, 1212-1215 (1959), *71 construing New Jersey case law, we concluded that under the New Jersey statute the opening of a bank account in trust form, without more, manifests an intent by the donor to create a trust for the benefit of a donee over which the donor reserves a power of revocation. The same is true of the trusts in this case. The fact that decedent did not exercise his powers over the trusts is irrelevant. The existence of the power, not its exercise, is crucial. I.R.C. Section 2038. McCaughn v. Fidelity Trust Co., 34 F.2d 443 (C.A. 3, 1929). Cf. Rev. Rul. 62-148, 1962-2 C.B. 153. 4. Mutual Funds. The administratrix claims that the value of certain mutual funds, purchased by decedent and held by him on the date of his death as custodian for his children under the District of Columbia Uniform Gifts to Minors Act, is not includible in his gross estate. Respondent contends it is includible under the provisions of section 2036(a) (1), because under the Uniform Act decedent had the power to determine the possession or enjoyment of the income of the *72 custodianship property, and under the provisions of section 2038(a), because decedent had the right to alter, amend, revoke or terminate the custodianship. The District of Columbia Uniform Gifts to Minors Act provides in part: § 21-304. Custodian to be one person; rights, powers, and duties of custodian. * * * (b) The custodian shall pay over to the minor for expenditure by him, or expend for the minor's benefit, so much of or all the custodial property as the custodian deems advisable for the support, maintenance, education, and benefit of the minor in the manner, at the times, and to the extent that the custodian in his discretion deems proper, with or without court order, with or without regard to the duty of himself or of any other person to support the minor or his ability to do so, and with or without regard to any other income or property of the minor which may be applicable or available for any such purpose. This Court has held, under the Uniform Gifts to Minors Act as enacted in *73 Wisconsin, which is identical in all important respects to the District of Columbia Uniform Gifts to Minors Act, that shares transferred by a decedent to himself as custodian for minors are includible in decedent's gross estate under both sections 2036 and 2038. Estate of Harry Prudowsky, 55 T.C. 890 (1971), affirmed per curiam 465 F.2d 62 (C.A. 7, 1972). The Court stated: Under the Wisconsin Uniform Gifts to Minors Act a custodian named thereunder has both the power to apply income or principal for the minor's support, maintenance, education, or benefit, and the power to terminate the relationship at his discrection. The former power permits a parent who names himself as custodian of a gift to his minor child to apply the funds of that custodianship in satisfaction of his legal obligation of support; the latter creates a power of termination. We have consistently held that a transferor-parent custodian, who dies while the custodianship is in effect, possesses at his death precisely those powers which under sections 2036 and 2038 result in the inclusion in *74 his gross estate of the assets transferred. Dorothy Stuit, 54 T.C. 580 (1970) [affirmed 452 F.2d 190 (C.A. 7, 1971)]; Estate of Jack F. Chrysler, 44 T.C. 55 (1965), reversed on other grounds 361 F.2d 508 (C.A. 2, 1966). 55 T.C. at 892-893. [Footnotes omitted.] The mutual funds held by decedent as custodian for his children are includible in his gross estate. The administratrix's argument that decedent never intended to disburse any amount held as custodian for the benefit of his children is irrelevant. See Estate of Harry Prudowsky, supra.
Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue. ↩