BENNETT, Circuit Judge.
This appeal from a final judgment of the United States Claims Court, entered October 8, 1982, which denied the refund of estate taxes, presents an issue of first impression: whether the “reciprocal trust” doctrine should be applied to a series of simultaneous transfers of property by a husband and wife to their children under the Florida Gifts to Minors Act, where each spouse appoints the other spouse as guardian. The United States Claims Court, in an as yet unpublished opinion by Judge Wiese,[1] applied the reciprocal trust doctrine to “uncross” the transfers, and therefore held for appellee. For the reasons set forth below, we affirm.
I
In 1956, Wayne Thomas, Jr. (decedent) and Catherine E. Thomas (decedent’s wife) received a gift of real property from Wayne Thomas, Sr. (decedent’s father). In 1959, decedent and his wife purchased real property from decedent’s father. The property which was purchased in 1959 was jointly acquired through resources supplied in equal measure by decedent and his wife. As an estate planning measure, the Thomases decided to transfer the property to a newly formed corporation (Fishhawk Ranch, Inc.) in exchange for stock of that corporation, such stock to be given to their then minor children.
On December 30,1959, decedent delivered to his wife, as custodian under the Florida Gifts to Minors Act, 25 shares of the stock for each of their seven minor children. On this same date, Catherine E. Thomas delivered the same number of shares to her husband, also as custodian for the children under the Florida Gifts to Minors Act. On four different occasions, in the years 1960 through 1962, Mr. and Mrs. Thomas made simultaneous transfers of stock for the benefit of their children, naming each other as custodian.[2] The Thomases filed federal gift tax returns for those transfers which exceeded the annual gift tax exclusion. In 1969, all the shares of Fishhawk Ranch, Inc., were exchanged for shares of the Continental Oil Company.
On February 8,1975, Wayne Thomas, Jr., died in an airplane crash. On the date of his death, all of the Thomas’ children except two, Mary Carol and Richard, had reached the age of majority (21 years old) under Florida law. At the time of his death, decedent held 8,605 shares of Continental Oil as custodian for each of his two minor children. On this same date, Mrs. Thomas held an identical number of shares as custodian for Mary Carol and Richard Thomas.
On November 7, 1975, appellants filed a U.S. estate tax return on behalf of the decedent’s estate. The return did not include the value of the stock Mr. Thomas held as custodian for his two minor children. On August 16,1978, the Commissioner of Internal Revenue issued a notice of deficiency to decedent’s estate. One of the reasons cited by the Commissioner for the deficiency was the failure to include the value of the assets decedent had transferred to his wife as custodian for Mary Carol Thomas and Richard Thomas under the Florida Gifts to Minors Act. The notice stated that these assets were includable in the gross estate “under the reciprocal trust doctrine for the reason that at the times decedent made transfers, Catherine E. Thomas made similar transfers to the decedent as custodian for Richard Thomas and Mary Carol Thomas * * * and at his death, the decedent was acting as such custodian.”[3]
On August 21, 1978, appellant Exchange Bank and Trust Company paid the sum of *1263 $164,767 to the Internal Revenue Service, representing the total deficiency assessed against the estate. On or about September 7,1978, appellant paid $31,985 in interest to the I.R.S. On November 30, 1978, appellants filed a claim for refund of the deficiency and interest assessed against the estate. On July 9,1979, appellants filed their petition.
II
The trial judge first noted that under the Uniform Gifts to Minors Act, and statutes modeled after it such as the Florida act, the custodian is vested with broad discretionary authority over the assets held. The custodian may (1) use income or principal for the minor’s support, maintenance, education or benefit; (2) control the timing of the enjoyment of the gift through the power to withhold or advance income and principal; and (3) terminate the relationship by distributing all the assets to the minor. The court then noted that these broad powers held by the custodian have been uniformly held to be includable, under sections 2036 and 2038 of the Internal Revenue Code,[4] in the gross estate of a parent-donor who names himself custodian and dies while serving in that capacity.[5] From the foregoing, the trial judge concluded that “[tjhere can be no question, therefore, that had Wayne Thomas, Jr. been the transferor of the custodial assets that he held at his death, their inclusion in his gross estate would have been required.”
The reciprocal trust doctrine was then applied to the transfers. The judge formulated this doctrine as follows:
The so-called reciprocal trust doctrine describes cross transfers of property in trust that are made pursuant to an interrelated scheme and that result, to the extent of like values involved, in leaving the settlors in approximately the same economic position they would have been in had they created trusts naming themselves as beneficiaries. * * * For estate tax purposes, assets or powers traceable to such interrelated transfers are deemed to have originated with the decedent himself and to the extent otherwise taxable, are included as part of the gross estate. United States v. Estate of Grace, 395 U.S. 316 [89 S.Ct. 1730, 23 L.Ed.2d 332] (1969). [Slip op. at 7-8.]
It was found that the concurrent transfers in this case were clearly within the ambit of the reciprocal trust doctrine for the following reasons: (1) the transfers were interrelated, as they resulted from a common plan executed by the donors with mutual awareness; and (2) each spouse gained custodianship over assets equal in value to those assets relinquished, thus each donor was in the same economic position as one who transfers assets to himself as custodian.
Finally, no basis was found for the proposition that the reciprocal trust doctrine should not be applied when dealing with crossed custodianships rather than crossed trusts.
In either case [trust or gift], the only concern is whether, at the time of death, a decedent had an economic interest, within the meaning of sections 2036 and/or 2038, traceable to the reciprocal transfer of assets. To the extent that is so, the law dictates the inclusion of those assets in the gross estate on the premise that their true source was the decedent himself. Estate of Bischoff v. Commissioner, 69 T.C. 32 (1977). [Slip op. at 10.]
Based on the foregoing rationale, it was held that the value of the assets decedent held as custodian on the date of his death was properly includable in his gross estate.
*1264 III
As an initial matter, appellants do not dispute the contention that if decedent had been the transferor and custodian of the stock held for his minor children on the date of death, then the value of the stock would be properly included in his gross estate under sections 2036(a)(1) and 2038(a)(1). Under section 2036(a)(1), if the decedent has retained the right to have the transferred property, or the income from that property, applied toward the satisfaction of his legal support obligations, he will be considered to have retained the “possession or enjoyment of, or the right to income from, the property.”[6] Helvering v. Mercantile Bank & Trust Co., 111 F.2d 224 (8th Cir.), cert. denied, 310 U.S. 654, 60 S.Ct. 1104, 84 L.Ed. 1418 (1940); Estate Tax Regulation § 20.2036-1(b)(2). The decedent here clearly had a legal obligation to support his minor children. The Florida Gifts to Minors Act grants the custodian the power to expend for the minor’s benefit “so much of or all the custodial property as the custodian deems advisable for the support, maintenance, education and benefit of the minor * * * in his discretion * * * with or without regard to the duty of himself or of any other person to support the minor or his ability to do so * * Fla.Stat. § 710.-05(2) (1963) (emphasis added). Whether or not the decedent actually used the property or income held as custodian for the support of his minor children is not determinative, as it is the mere power to so use these resources that invokes the application of section 2036.
Section 2038(a)(1) states that the gross estate shall include the value of any interest where the decedent, as transferor, died possessing the power to “alter, amend, revoke or terminate.”[7] The Florida Gifts to Minors Act specifically authorizes the custodian to, in effect, terminate the custodial arrangement by exercising the power to “pay over to the minor * * * all of the custodial property.” Fla.Stat. § 710.05(2) (1963). As mentioned earlier, all of the courts that have ruled on the issue have uniformly held that the value of the retained interest of a transferor, who is also custodian under the Uniform Gifts to Minors Act and who holds these assets as custodian on the date of his death, is includable in the decedent’s gross estate.[8]
Under the facts before us, however, the decedent was not the transferor and custodian of the stock which he held for the benefit of his minor children. As appellant points out, and appellee does not dispute, if a husband transfers property to his wife as custodian for their minor children and the husband dies while his wife is still serving in that capacity, the decedent’s gross estate does not include the custodial property. Revenue Ruling 59-357, 1959-2 C.B. 212, provides:
*1265 The value of property so transferred is includible in the gross estate of the donor for federal estate tax purposes if * * * the donor appoints himself custodian and dies while serving in that capacity. See Rev.Rul. 57-366, C.B. 1957-2, 618; and section 20.2038-l(a) of the Estate Tax Regulations. In all other circumstances custodial property is includible only in the gross estate of the donee.
If the applicable statutes were to be literally applied, then there is no question that the decedent’s gross estate would not include the value of the property he held as custodian. Sections 2036 and 2038 speak, in effect, of interests retained by a transferor of property. If this court, therefore, were not to impute to decedent the status of transferor of the custodial assets which he held on the date of his death, then the appellants would be entitled to a refund of the estate taxes and interest paid as a result of the inclusion of these assets into decedent’s estate.
The central question before this court, then, is whether we should apply the reciprocal trust doctrine to uncross the custodial transfers. As previously mentioned, we are aware of no prior decision in which the reciprocal trust doctrine has been applied to custodianships created under the Uniform Gifts to Minors Act.
IV
The reciprocal trust doctrine is essentially a specific application of “substance over form.” There is no question that the transfers here are literally outside the language of sections 2036 and 2038 — decedent did not retain the custodial powers in the assets he transferred. Rather, decedent’s powers as custodian were over assets which were transferred to him by his wife. If courts were slavishly to be bound to the literal language of the statute, then the appellants would clearly be entitled to recover.
Courts have long “looked through” various transactions in the field of taxation to determine the true nature of what has transpired. In Lehman v. Commissioner, 109 F.2d 99 (2d Cir.), cert. denied, 310 U.S. 637, 60 S.Ct. 1080, 84 L.Ed. 1406 (1940), the case which is credited with originating the reciprocal trust doctrine, the court afforded no deference to the fact that the cross-trusts were structured so as to avoid the literal language of the statute:
The fact that the trusts were reciprocated or “crossed” is a trifle, quite lacking in practical or legal significance * * *. The law searches out the reality and is not concerned with the form. [109 F.2d at 100.]
The leading case in the application of the reciprocal trust doctrine is the Supreme Court’s decision in United States v. Estate of Grace, 395 U.S. 316, 89 S.Ct. 1730, 23 L.Ed.2d 332 (1969). In Grace, the decedent (Joseph Grace) created a trust giving a life estate to his wife (Janet Grace) and also granting her a testamentary power of appointment. A short time thereafter, Janet Grace created a trust which was virtually identical to the trust created by her husband. The corpus of this second trust was composed of assets that had earlier been given to Janet Grace by her husband. The United States Court of Claims, with two judges dissenting, held that there was no showing of reciprocity, as it was not shown that the trusts were created in consideration of each other. Estate of Grace v. United States, 393 F.2d 939 (Ct.Cl.1968). Judge Davis, writing the dissent, felt that the majority had placéd too much emphasis on the subjective intent of the parties.
The Supreme Court essentially adopted the position of the dissent, and held that there need be no showing of consideration in applying the reciprocal trust doctrine.
Rather, we hold that application of the reciprocal trust doctrine requires only that the trusts be interrelated, and that the arrangement, to the extent of mutual value, leaves the settlors in approximately the same economic position as they would have been in had they created trusts naming themselves as life beneficiaries. [395 U.S. at 324, 89 S.Ct. at 1735 (footnote omitted).]
*1266 Appellants assert that Grace is inapplicable to this case for the following reasons: (1) trusts are very different from custodial arrangements; (2) the gifts of stock by decedent and his wife were not interrelated within the meaning of Grace; and (3) unlike in Grace, the decedent here did not retain an economic interest in the transferred property. Each of appellants’ arguments will be discussed in turn.
Appellants offer very little in support of their argument that the custodial arrangements used by the Thomases should be treated differently than trusts. Appellants emphasize that no decision to date has applied the reciprocal trust doctrine to custodial arrangements. But, by the same token, appellants can point to no decision where the Internal Revenue Service or a court has specifically held that the doctrine is not applicable. This lack of a specific precedent does little to argue for or against the application of the reciprocal trust doctrine in this case.
Appellants assert that there were no attractive alternatives for providing for the Thomas children other than the custodial arrangement here employed. The alternatives — creating a trust or appointing a guardian — were unduly burdensome and expensive by comparison. Appellants also point out that under the Florida statute, the only persons who could be named as custodian were the donor, an adult member of the minor’s family, a guardian of the minor, or a trust company. See Fla.Stat. § 710.03(l)(a) (1963). A very logical choice of custodian, appellants state, would be one’s spouse. These arguments presumably are intended to delineate the differences between a custodianship and a trust.[9]
Appellants’ argument that the gifts here were not interrelated within the meaning of Grace is based upon the assertion that Mrs. Thomas had substantial net worth and income in her own right. Appellants point out that in Grace it was found that Mrs. Grace had obtained all her property from her husband and had followed his instructions in setting up the trusts. Appellants also state that Catherine E. Thomas would have made the gifts to her children even if the decedent had not. The argument made here, which relates to the subjective intent of the parties, was-explicitly rejected by the Court in Grace:
Emphasis on the subjective intent of the parties in creating the trusts, particularly when those parties are members of the same family unit, creates substantial obstacles to the proper application of the federal estate tax laws. * * * We agree that “the taxability of a trust corpus . .. does not hinge on a settlor’s motives, but depends on the nature and operative effect of the trust transfer.” [395' U.S, at 323, 89 S.Ct. at 1734 (citations omitted).]
Grace stands for the proposition that in analyzing whether to apply the reciprocal trust doctrine, an objective analysis of the parties’ economic positions should predominate. Certainly a court would take note of whether it appears to be confronted with an abusive plan of tax avoidance, but the apparent absence of such a motive should not be dispositive.
The facts of this case clearly demonstrate that the custodial arrangements were “interrelated.” The trial court found, and it has not been disputed, that Mr. and Mrs. Thomas’ transfers to their children all occurred on the same dates and involved an identical number of shares of stock. It is not contended that this series of transfers by both spouses was merely coincidental— rather it appears to have been in pursuance of a prearranged plan of gifting. Clearly, the gifts here were “interrelated” as that term is used in Grace.
The main thrust of appellants’ argument is that, unlike in Grace, here the decedent *1267 and his wife did not retain a substantial economic interest in the property transferred. The argument in this case parallels that made before the Tax Court in Estate of Bischoff v. Commissioner, 69 T.C. 32 (1977). Appellants strongly rely on the dissent in Bischoff in support of their position that the reciprocal trust doctrine should not be applied in this case.
Bischoff involved two grandparents who, one day apart, set up identical trusts for the benefit of their grandchildren, and each settlor named the other spouse as trustee. In their roles as trustees, each grandparent had the power to accumulate trust income or to distribute income or corpus to the beneficiaries in their sole discretion. It was undisputed in Bischoff that such power over enjoyment, if the settlor appointed himself trustee, would result in taxation under sections 2036(a)(2) and 2038(a)(1) if a settlor died possessing such powers. The petitioners in Bischoff contended that Grace required, as a condition precedent to the application of the reciprocal trust doctrine, a finding that a decedent died possessing an economic interest in the property transferred. It was argued that the powers possessed by the decedent, as trustee, did not constitute such an economic interest.
The majority in Bischoff rejected the argument that the retention of an economic interest was a precondition to the application of the reciprocal trust doctrine.
[Petitioners’ theory demonstrates a basic misconception of the doctrine’s function. The purpose of the doctrine is merely to identify the transferor of property. Standing alone, its application does not impose a tax; rather, the incidence of taxation depends upon the operation of a Code section when the shroud of form is lifted and the true transferor revealed. In other words, the doctrine’s application is only part of a two-step process of taxation, i.e., it is not enough merely to “uncross” the trusts, there must also exist a basis for their taxation. In Grace the two trusts were uncrossed because they were “interrelated” and not, as petitioners urge, because the decedent therein held a direct economic interest in the property. The basis of taxation which led to the inclusion of the value of the trust corpus in the decedent’s estate was crossed life estates under section 811(c)(l)(B)(i) of the 1939 Internal Revenue Code (the predecessor of section 2036(a)(1)). Thus, in our opinion, the Court’s reference to the “same economic position * * * as life beneficiaries” was merely its formulation of the basis of taxation on the facts before it. [69 T.C. at 45-46 (footnote omitted) (emphasis in text).]
The majority recognized that if the reciprocal trust doctrine were applied only to transfers involving crossed economic interests, and not powers over enjoyment, an incongruous situation would develop.
In short, adoption of petitioners’ interpretation of Grace would be tantamount to ignoring the fact that Congress has decided that the power to use property for one’s own personal benefit will not be the only basis for taxation under sections 2036 and 2038. Indeed, the mere power to affect the timing of the enjoyment of property is sufficient to attract a tax under sections 2036(a)(2) and 2038(a)(1). United States v. O’Malley, 383 U.S. 627 [86 S.Ct. 1123, 16 L.Ed.2d 145] (1966); Lober v. United States, 346 U.S. 335 [74 S. Ct. 98, 98 L.Ed. 15] (1953). We simply are not convinced that the Supreme Court intended to close a perceived loophole under section 2036(a)(1) and, at the same time, permit one to flourish under sections 2036(a)(2) and 2038(a)(1). [69 T. C. at 46-47 (footnote omitted).]
The Tax Court therefore found that the trusts were interrelated and that the value of the trust corpus was includable in the petitioners’ respective estates.
As mentioned above, appellants in this case urge that we adopt the position of the dissent in Bischoff, which expressed the view that the reciprocal trust doctrine should be applied only where the transferors retained powers having “economic value.” The dissent stated:
*1268 This is not the kind of situation the reciprocal trust doctrine was intended to cover or, at least since Grace, ever has been extended to cover. I recognize the majority’s argument that Congress has decided the question of retained powers which suffice for includability and that indirect retention of the equivalent of such powers through reciprocal arrangements should produce the same result. However, I believe this would carry a good and necessary principle too far — certainly further than the language of Grace would warrant. I conclude that such an extension of the doctrine is unwarranted under these circumstances. While it is true that each settlor gave the other powers, retention of which would have frustrated the estate plan, Congress permits a grantor, and it is common planning, to put such powers in the hands of one’s spouse. The mere fact that both spouses had similar property and one spouse concurrently does the same with his or her own trusts does not improve the economic position of the power-holding spouse or make the other spouse the “transferor.” Congress chose to allow the entrusting to a spouse of the power to accumulate trust income or to distribute trust income or corpus, which power could not be retained personally. It seems to me that until Congress provides to the contrary, it is not for us to say that where spouses happen to own similar property they are barred from each doing concurrently what either could safely do alone. Unlike the cases of illusory relinquishment of economic interests where the reciprocal trust doctrine has been applied, there has here been the real relinquishment of economic value which the statute contemplates for exclusion from the estate. [69 T.C. at 52-53.]
Appellants, like the dissent in Bischoff, contend that the transferor must retain a substantial economic interest in order for the reciprocal trust doctrine to apply. Appellants state that Catherine E. Thomas did not retain such an interest, and thus was worse off economically without regard to whether her husband made a concurrent gift to their children. Since Mrs. Thomas did not keep any economic interest in the property, it is argued that this case is distinguishable from Grace and other decisions — other than Bischoff — where the reciprocal trust doctrine has been applied.[10]
Nowhere in Grace can we find the requirement that the transferors retain a substantial economic interest in order for the reciprocal trust doctrine to apply. Grace does not speak in terms of a retained economic interest — rather, that the arrangement “leaves the settlors in approximately the same economic position as they would have been in had they created trusts naming themselves as life beneficiaries.” 395 U.S. at 324, 89 S.Ct. at 1735 (emphasis added). Clearly, Mr. and Mrs. Thomas were left in the same economic position as if each had named himself or herself as custodian. On each of the five dates where stock was transferred, the Thomases gained custodial control — and thus the powers over enjoyment and the ability to satisfy support obligations — over the exact number of shares of stock as that which they relinquished control of to the other spouse. Wayne Thomas, Jr., and Catherine E. Thomas may have had nominal control over the other’s stock, but the objective effect of the transaction was the same as if each had named himself custodian over stock that he or she had owned.
There is indeed a distinction between the trusts in Grace whereby the settlors (upon the uncrossing of the trusts) retained life estates and the gifts here, which are taxable by reason of the powers over enjoyment and the ability to apply the income or principal for legal support obligations. Such a *1269 distinction, however, is really addressed to whether the “interest” or “power” is taxable at all, not whether the reciprocal trust doctrine should be applied. We agree with the majority in Bischoff and the appellee in this action that the reciprocal trust doctrine merely identifies the true transferor, but the actual basis for taxation is founded upon specific statutory authority. The estate tax provisions applicable here, sections 2036 and 2038, reach out to tax both retained interests and powers. Thus, there may be a literal distinction, but this distinction does not impact on whether an arrangement is subject to taxation.
V
In summary, we hold that the reciprocal trust doctrine should be applied to uncross the custodianships because the transfers were interrelated, and because the arrangements left the donors in the same economic position as they would have been in had they retained the property as custodians under the Florida Gifts to Minors Act. Since the decedent is treated as the transferor and custodian over the stock transferred to him by his wife, the value of this property held for the benefit of his minor children on the date of his death was properly included in his gross estate under sections 2036(a)(1) and 2038(a)(1). Accordingly, the judgment of the Claims Court is affirmed.

. The opinion was furnished to the parties when filed and has been well briefed for this appeal.

. Wayne Thomas, Sr., also made a gift of stock to the minor children during this period. This transfer, however, is not relevant to the issue presented in this case.

. When the case was brought to court the government reformulated the issue to be the includability of the stock transferred by Catherine E. Thomas to decedent as custodian for their minor children.

. All section numbers refer to the Internal Revenue Code of 1954, as amended, title 26 of the United States Code, unless otherwise stated. The contents of these Code sections will be discussed later in the opinion.

. Eichstedt v. United States, 354 F.Supp. 484 (N.D.Cal.1972); Estate of Prudowsky v. Commissioner, 55 T.C. 890 (1971), aff'd, 465 F.2d 62 (7th Cir.1972); Stuit v. Commissioner, 54 T.C. 580 (1970), aff'd, 452 F.2d 190 (7th Cir.1971); Estate of Chrysler v. Commissioner, 44 T.C. 55 (1965), rev’d on other grounds, 361 F.2d 508 (2d Cir.1966); Rev.Rul. 59-357, 1959-2 C.B. 212; Rev.Rul. 57-366, 1957-2 C.B. 618.

. Section 2036(a) reads as follows:
“(a) General rule. — The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money’s worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—
“(1) the possession or enjoyment of, or the right to the income from, the property, or
“(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.”

. Section 2038(a)(1), as of the date of decedent’s death, read as follows:
“(a) In general. — The value of the gross estate shall include the value of all property—
“(1) Transfers after June 22, 1936. — To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money’s worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent’s death.”

. See supra note 5.

. Appellants do not explicitly explain the significance of these arguments. Perhaps appellants are really trying to point out that this is not an example of tax avoidance, such as might be found in the manipulation of the terms of certain crossed trusts. If this is the case, it is worth noting that the Court in Grace specifically held that it was not “necessary to prove the existence of a tax-avoidance motive” in order to apply the reciprocal trust doctrine. [395 U.S. at 324, 89 S.Ct. at 1735.]

. We do not infer approval of appellants’ contention that the Thomases, in their roles as custodian, did not possess an economic interest. The ability to apply either income or principal for the minor’s support may be more accurately described as an “economic interest” than a “power over enjoyment.” As mentioned earlier, such an ability is treated as a “possession or enjoyment of * * * property.” We do not find, however, that the resolution of this issue is necessary to our holding in this case.