ERDMANN, Respondent, v. ERDMANN, Appellant.

*No. 370. Submitted under sec. (Rule) 251.54 February 5, 1975.—*
*Decided March 4, 1975.*
(Also reported in 226 N. W. 2d 439.)

For the appellant the cause was submitted on the briefs of *Harold M. Frauendorfer*, attorney, and *Earl A. Hagen* of counsel, both of Milwaukee; and for the respondent the cause was submitted on the brief of *George Barrock* of Milwaukee, attorney, and *Thompson, Evans, Hostak & Clack* of Racine, of counsel.

ROBERT W. HANSEN, J.    Appellant was given two hats to wear by the divorce judgment.  One was the hat of a noncustodial father directed by court order to make certain payments for the support and education of his minor children of the dissolved marriage.  The other was the hat of custodian of an investment fund established by the divorce judgment for the support, maintenance, education and benefit of the same minor children. His claim is that he was entitled to doff the hat of a father, under court order to make support payments, long enough to don the hat of custodian of the investment fund so as to use the fund to make the payments he, as the father of the children, had been ordered to make.

The claim of the defendant of his right to thus exchange hats is based upon the language of the Uniform Gifts to Minors statute, providing that the custodian of an investment fund created for the benefit of minor children, may make payments from such fund for their

benefit "with or without court order, with or without regard to the duty of himself or of any other person to support the minor or his ability to do so." [1] The primary authority relied upon by the defendant is the tax court decision, *Estate of Prudowsky,* holding that assets held by decedent as custodian for his minor children under the Wisconsin Uniform Gifts to Minors Act were includable in his gross estate. [2] There the tax court found unacceptable the argument that, under the Wisconsin act, the decedent would have been restrained from employing the custodial assets ". . . in satisfaction of his legal obligation of support . . . ." [3]

Instead, in *Prudowsky,* the tax court held that, under the Wisconsin Uniform Gifts to Minors Act, ". . . a custodian named thereunder has both the power to apply income or principal for the minor's support, maintenance, education, or benefit, *and the power to terminate the relationship at his discretion."* (Emphasis supplied.) [4]

---

[1] Sec. 880.64 (2), Stats., providing: "The custodian shall pay over to the minor for expenditure by him, or expend for the minor's benefit, so much of or all the custodial property as the custodian deems advisable for the support, maintenance, education and benefit of the minor in the manner, at the time or times, and to the extent that the custodian in his discretion deems suitable and proper, with or without court order, with or without regard to the duty of himself or of any other person to support the minor or his ability to do so, and with or without regard to any other income or property of the minor which may be applicable or available for any such purpose."

[2] *Estate of Prudowsky v. Commissioner* (1971), 55 T. C. 890, affirmed per curiam (7th Cir. 1972), 465 Fed. 2d 62. *See also: Dorothy Stuit v. Commissioner* (1970), 54 T. C. 580, where the tax court held the corpus of a gift created under the Illinois Uniform Gifts to Minors Act by a grandmother for her grandchildren to be includable in the grandmother's estate where she had appointed herself custodian, had control of the fund and could "terminate" it.

[3] *Id.* at page 895.

[4] *Id.* at pages 892, 893.

The tax court concluded: "The former power permits a parent who names himself as custodian of a gift to his minor child to apply the funds of that custodianship in satisfaction of his legal obligation of support; *the latter creates a power of termination. . . .*" (Emphasis supplied.) [5] As to the value of the assets transferred being includable in the custodian's estate, this power to terminate the fund for the benefit of children and return the assets involved to full control and ownership of the parent who created the fund was crucial. In the case before us, that right to terminate the fund is not present. This investment fund was established by action of a court of equity. It could not be modified, much less terminated, by the parent named as custodian. It could be altered or ended, only by the court which created it. *Prudowsky* holds that where ". . . one who has a legal obligation of support transfers property to himself as custodian under a Uniform Gifts to Minors Act containing provisions equivalent to those contained in the Wisconsin act he thereby retains the power to apply said assets in satisfaction of his legal obligation. . . ." [6] In the case before us, we do not have one who had a legal obligation to support children transferring property to himself as custodian, and retaining the right to terminate the arrangement. Instead we have a court-created investment fund, with no right to terminate on the part of the person named as custodian of the fund. We do not see *Prudowsky* as either reaching or determining the issue here presented.

The presence or absence of a right to terminate the fund involved is material on the question of to whom the fund created belongs. In *Prudowsky,* with the parent-donor retaining the right to terminate the fund arrangement at any time, the tax court held that the fund be-

[5] *Id.* at page 893.

[6] *Id.* at page 894.

longed to him and was properly includable among the assets of his estate. In our case here, with the court-appointed custodian of the fund having no power to terminate the fund, the fund belonged to the children. In fact, the fund belonged to the children at the time of the divorce. It represented gifts made by their grandfather for their use and benefit. That is the reason for the divorce court ordering that the funds, then in the possession of parent or parents, ". . . be promptly transferred so as to be held by defendant as custodian . . . ." Holding that the fund belongs to the children, an asset of theirs and not of parent or parents, gives the court-created custodianship the added dimension of a trusteeship, charged with the court-imposed responsibility of administering a fund belonging, not to the custodian but to his children. The identity of the particular custodian named does not here change the nature of the court-imposed responsibility involved. The divorce court was not required to follow the stipulation or joint recommendation of the parties in the divorce action. It could have named the plaintiff wife or an officer of the court to serve as custodian. The naming of a particular custodian does not alter the purpose to be served by creating the fund nor the fact that the property involved was the property of the children involved.

While the investment fund here created incorporates the Uniform Gifts to Minors statutory provisions, it remains a court-created fund of property belonging to the children and to be used for their benefit. This situation is clearly distinguishable from the *Prudowsky* situation where a parent named himself as custodian of his gift to his children, and retained the power to terminate the fund created.[7] Here the role and authority of the court-named custodian are alike impressed with a trust obligation to treat the fund as belonging to the children and to expend it only for the benefit of the children, not for

---

[7] *Id.* at pages 892, 893.

the benefit of the trustee. We see the custodian-beneficiary relationship thus established by the divorce judgment to be analogous to that of a parent, named by a court as guardian of the estates of his or her children. Of such dual responsibility, one person wearing two hats, the Texas appellate court, as we see it, correctly ruled:

". . . Where the parent, who has resources of his own sufficient to maintain his children, is also guardian of their estate, his obligation to support them out of his own means is not changed thereby. . . . In such cases recourse on the ward's estate is not permitted. Our statutes relating to the estate of minors authorizes the guardian, without direction of the court, to use the clear income of his ward's estate for its support, and does not in terms make any distinction between cases where the parent or a stranger is guardian, or where, if the parent is guardian, he has or has not the ability to support the ward. But the object of these statutes is to protect and conserve the estates of the minors, and our opinion is that it was never contemplated that the income of the ward's estate should be used for its support, etc., unless it was necessary to do so. Such necessity, in view of the rule above stated, would not exist if the parent's resources were ample. Whether the parent has the ability to provide support for the minors out of his own means or not would ordinarily involve consideration of the circumstances surrounding him at the time, bearing on this ability. . . ." [8]

[8] *Moore v. Moore* (Tex. Civ. App. 1895), 31 S. W. 532, 534, affirmed 89 Tex. 29, 33 S. W. 217. *See also: Schwartz Estate* (1972), 449 Pa. 112, 115, fn. 2, 295 Atl. 2d 600, stating: "Since the argument has not been raised either below or on appeal, we will assume for the purpose of this decision that the *donor-custodian* could in fact substitute custodial funds for his legal obligation to support. However, it is less than clear under the language of Section 5(b) of the Uniform Gifts to Minors Act that the custodian could use the proceeds of the fund to defray a pre-existing support obligation. Nothing in the Act states that the custodian can use the custodial property to relieve himself of his support obligations. In order to give the custodian maximum

Holding the fund here established to involve property that belonged to the two children of the parties, we see an obvious benefit to the appellant, as custodian, using the funds to make support payments that he would otherwise have had to make as parent out of his own funds. We do not see the benefit to the children deriving from the use of their property to make the payments that, if their fund was not used, their father would be required to make out of his income or assets. As the Texas court decided in the guardianship situation, we hold that the fund created for the benefit of the children could not be used by this custodian to make payments he was ordered by the court, as their parent, to make for their support and maintenance. This would not close the door to the funds being used to defray major medical expenses or to provide for support or education were the parent ordered to pay for such expenses was unable to do so. However, where the fund is court created and the fund involved represents property of the children who are the sole beneficiaries of the fund, the parent-custodian here was required to apply to the court which created the fund to establish the fact of his inability as parent to make the payments ordered, and of the need or benefit to the children in using the fund to make such payments as custodian. Where no application is made to the court for modification of the provisions of a divorce judgment

---

flexibility in the administration of the fund, the Act specifically provides that he can make distributions for the benefit of the minor 'with or without regard' to his own or any other person's duty to support the minor. The plain meaning of the language does not indicate that the custodian can use the proceeds of the fund in lieu of an independent prior support obligation," and holding (at page 117) that: ". . . It appears to be impossible for the custodian to have used his statutory authority to his own advantage. . . ." (Emphasis supplied.)

relating to support and maintenance of minor children,[9] the law in this state remains that: " 'A father of sufficient means must support his child, and it is not a defense that either the mother-custodian, *or the child itself*, has independent means. . . .' " (Emphasis supplied.) [10]

*By the Court.*—Order affirmed.

---

[9] For authority of court to modify the provision of a divorce judgment relating to support money when there has been a substantial or material change in the circumstances of the parties or children, *see: Krause v. Krause* (1973), 58 Wis. 2d 499, 508, 206 N. W. 2d 589, the decision also holding (at page 507): ". . . Even though the husband's duty to support his minor children may become an onerous burden, it is present and will be recognized. . . ."

[10] *Schade v. Schade* (1957), 274 Wis. 519, 525, 80 N. W. 2d 416, quoting *Commonwealth ex rel. Firestone v. Firestone* (1946), 158 Pa. Super. 579, 581, 45 Atl. 2d 923, 924.