489 A.2d 764

**Carlene S. SUTLIFF, Appellant at No. 2423,**

**v.**

**Gregory L. SUTLIFF and Fred K. Collins,
Appellants at No. 2495.**

**Carlene S. SUTLIFF,**

**v.**

**Gregory L. SUTLIFF, Appellant.**

**COMMONWEALTH ex rel. Carlene SUTLIFF,**

**v.**

**Gregory L. SUTLIFF.**

**Appeal of Carlene S. SUTLIFF.**

Superior Court of Pennsylvania.

Argued Feb. 1, 1984.

Filed Jan. 30, 1985.

Reargument Denied April 4, 1985.

526

Ronald Katzman, Harrisburg, for appellant (at 2423, 3168 and 3208) and for appellee (at 2495 and 3117).

Bonnie D. Menaker, Harrisburg, for appellants (at 2495 and 3117) and for appellees (at 2423, 3168 and 3208).

Before SPAETH, President Judge, and BECK and HOFF-MAN, JJ.

BECK, Judge:

## INTRODUCTION

Since the separation of Carlene S. Sutliff (hereinafter Wife) and Gregory L. Sutliff (hereinafter Husband) in October, 1981, the affairs of the family have been embroiled in litigation. A divorce action is currently pending in the courts of Cumberland County; this court en banc resolved certain issues pertaining to alimony pendente lite in *Sutliff v. Sutliff*, 326 Pa.Super. 496, 474 A.2d 599 (1984). We now have before us for disposition several appeals linked by the common issue of the manner and extent to which funds gifted to the Sutliffs' children pursuant to the Pennsylvania Uniform Gifts to Minors Act, 20 Pa.C.S. § 5301 et seq. (hereinafter UGMA), may be used in determining and fulfilling the parents' support obligations. This is an issue of first impression in Pennsylvania.

Nos. 2423 and 2495 Philadelphia 1982 are cross-appeals from the final decree of the Court of Common Pleas of Cumberland County, Orphans' Court Division, in an action brought by Wife pursuant to sections 5308(e) and 5309(a) of the UGMA, 20 Pa.C.S. §§ 5308(e), 5309(a). In this action, Wife sought to remove Husband and Fred K. Collins (hereinafter Collins), a business associate of Husband, as custodians of the children's funds and appoint a trust company as successor custodian, on the grounds that Husband and Collins had acted improperly in using the custodial funds to meet Husband's court-ordered support obligation and other child support expenses. Wife also requested an accounting and asked that the custodians be surcharged for the amounts improperly expended. Husband and Collins denied any impropriety and counterclaimed for attorney's fees. The lower court denied Wife's request for an accounting and refused to remove the custodians or surcharge them. The court also denied the request of Husband and Collins for attorney's fees. Both parties appealed.

The remaining appeals relate to a support action commenced by Wife in November 1981. At Nos. 3117 and 3168

Philadelphia 1982, the parties cross-appeal the lower court's October 4, 1982 order awarding $300 per week for Wife's support and $600 per week for the support of the couple's three daughters. Husband's appeal raises, inter alia, the issue whether the court erred in entering a support order "in favor of children who are independently wealthy and who are economically independent", referring in his argument both to the children's assets held by Husband and Collins as custodians under the UGMA and to the children's income from Clifford trusts. In response, Wife contends that the children's assets do not diminish Husband's duty to support his children out of his substantial assets and income. Wife's cross-appeal raises the issue of the proper effective date of the support order.

Finally, in No. 3208 Philadelphia 1982, Wife appeals from a November 5, 1982 order of the trial court modifying its October 4, 1982 order. The modified order provided that the oldest daughter's college fees and other expenses shall be paid by Husband out of her custodial accounts. Wife's appeal challenges the jurisdiction of the court to enter the modified order, and on the merits raises the question whether it was proper for the court to order the payment of college expenses for a child over eighteen years of age out of custodial funds.

Although the appeals from the original and modified support orders involve a number of issues, our holding on the issues concerning the custodial funds is of primary importance in determining the disposition of these appeals. Accordingly, in the interests of clarity and judicial economy we shall handle all the foregoing appeals together in this opinion.

## FACTUAL BACKGROUND

A brief outline of the factual background is necessary to place the issues in context. The Sutliffs were married in 1960. They have four children: Gregory M., age 23; Kim-

berly, age 20; Julia, age 17; and Laura, age 12.[1] Husband is a highly successful automobile dealer. His income in 1981 was well in excess of $130,000 and his net worth is approximately three million dollars. Wife is a physician. She stopped working shortly after Laura's birth and did not resume her career until 1980. She then took a part-time position as an emergency room physician earning approximately $26,000 per year. She decided to work only part-time in order to have more time at home with the children (Laura and Julia live with Wife, as does Kimberly when she is home from college).

The assets held by Husband and Collins were gifted by Husband and his parents. In 1981 the total value of the assets held by the custodians for all four children was over $466,000. The assets were divided among the children as equally as possible.

On November 4, 1981, shortly after the separation, Wife filed a complaint for support for herself and the three daughters. The court entered an interim order on December 3, 1981 providing for $400 per week support for the children and no support for Wife. Husband began making three-fourths of the payments to the Domestic Relations Office pursuant to this order from the children's accounts of which he was the custodian. At the same time he also began to pay for various other items for the children from the custodial accounts, including small items like magazine subscriptions. On February 17, 1982, Wife commenced the orphans' court action seeking removal of Husband and Collins as custodians. The court issued its decree in that action denying Wife's petition on August 5, 1982. On October 4, 1982, the court entered a further order in the support action which provided for $300 per week support for Wife and $600 per week support for the children.

---

1. Gregory's support is not at issue in these appeals, and he was never included in any support order. The record indicates that the assets in his custodial accounts were transferred to him outright when he reached the age of 21.

This order was modified on November 5, 1982. The modified order provided that Kimberly's college costs and incidental expenses be paid by Husband out of her custodial accounts, and awarded $400 per week support for Julia and Laura. The provisions relating to support for Wife remained unchanged. In fashioning the original and modified support orders, the lower court restated and applied its earlier holding that the custodial funds could be used to meet the child support obligation. The appeals of Wife from the October 4, 1982 support order and the November 5, 1982 modified support order challenge the propriety of using custodial funds in this manner.

## EFFECT OF UGMA ON SUPPORT OF CHILDREN UNDER 18

Taken together, these appeals present a multifaceted question concerning the proper role of assets held by custodians under the UGMA in child support proceedings. The appeals in the support action raise the issue of how, if at all, such assets should be considered by the court in assessing the needs of the child and (if the custodian is a parent) the parents' ability to pay, and therefore ultimately in setting the amount of the support order. The appeal in the orphans' court case requires us to determine if and when a parent may use the custodial assets and income to satisfy an existing court-ordered support obligation.

These are issues of first impression in our courts. Although both sides claim the Pennsylvania Supreme Court's plurality decision in *Schwartz Estate*, 449 Pa. 112, 295 A.2d 600 (1972), supports their position, it is more accurate to say that the supreme court in that case sidestepped the issue. Even if *Schwartz* were on point, we recognize it as a plurality opinion and therefore not controlling. In *Schwartz*, the precise question before the court was whether assets held by a decedent as custodian for his minor children under the UGMA were subject to his widow's right of election. Under the applicable statutory provisions at the time, the assets which the decedent conveyed to himself

as custodian were subject to the election if decedent retained a "power of consumption" of the principal. In reaching the conclusion that a custodian under the UGMA did not retain such a power of consumption, the plurality expressly avoided deciding whether a donor-custodian could properly substitute custodial funds for his legal obligation to support his minor children, because the plurality believed that even if such use were permitted, it would not constitute a power of consumption. *See* 449 Pa. at 115 n. 2, 295 A.2d at 603 n. 2. In the same footnote, though, the plurality did express doubts that the UGMA could be so construed, stating that "[t]he plain meaning of the language does not indicate that the custodian can use the proceeds of the fund in lieu of an independent prior support obligation." *Id.*[2]

We believe that the issues in the case sub judice are best resolved by interpreting the UGMA in light of its purposes and the policies underlying our law of child support. The primary goal of the UGMA was to simplify the procedure for giving securities or money to minors; a great deal of the impetus for its adoption came from the securities industry. *See* Newman, *The Uniform Gifts to Minors Act in New York and Other Jurisdictions—Tax Consequences, Possible Abuses, and Recommendations,* 49 Cornell L.Q. 12 (1963). To achieve this goal, the statute gives the custodian broad discretion with respect to the investment and expenditure of custodial assets, and allows third parties (such as banks and brokers) to deal with the custodian free from liability and without any duty to determine whether the custodian has been duly designated or whether the transaction is within the custodian's power. *Id.* In other words, the UGMA is intended to obviate the legal problems of dealing directly with minors on the one hand, and the complexities of trust instruments and the limitations on the

2. For discussions of the inconclusiveness and contradictory nature of the supreme court's approach to the UGMA in *Schwartz, see* Note, *Estates—Election by Surviving Spouse—Power of Consumption—Inter Vivos Gift Under Uniform Gifts to Minors Act,* 12 Duq.L.Rev. 125 (1973), and Note, *The Pennsylvania Uniform Gifts to Minors Act—A Judicial Gloss,* 47 Temp.L.Q. 140 (1973).

powers of trustees on the other hand, while at the same time protecting the rights of the minor in the gifted property. The statute was also intended to conform with the annual gift tax exclusion provisions of the Internal Revenue Code.

Both parties find support for their positions in the language of the UGMA. Husband argues that the broad discretion which the UGMA gives the custodian allows him to expend custodial funds to satisfy his support obligations. He cites section 5305(b) of the UGMA, 20 Pa.C.S. § 5305(b), which provides:

> The custodian shall pay over to the minor for expenditure by him or expend for the minor's benefit so much of or all the custodial property as the custodian deems advisable for the support, maintenance, education and benefit of the minor, in the manner, at the time or times, and to the extent that the custodian, in his discretion, deems suitable and proper, with or without court order, with or without regard to the duty of himself or of any other person to support the minor, or his ability to do so, and with or without regard to any other income or property of the minor, which may be applicable or available for any such purpose.

The lower court agreed with Husband and held that this section gave him the authority as custodian to make support payments out of the children's funds, regardless of his ability to make the payments from his own assets.

Wife contends that the UGMA does not give the parent/custodian the freedom to relieve himself of his duty to provide support for his children by substituting the children's own funds. She argues that section 5305(b) only grants the custodian broad discretion to expend the custodial funds *for the benefit of the minor*, and that a parent/custodian who expends custodial funds to meet a court-ordered support obligation is expending the funds to benefit *himself*, because he thereby avoids the need to expend his own assets for the child's support. Wife emphasizes that the custodial property is indeed the children's: she cites

§ 5304(a) of the UGMA, 20 Pa.C.S. § 5304(a), which states unequivocally that the gift irrevocably and indefeasibly vests legal title to the custodial property in the minor.

■■■ We agree with the Wife that a father with ample resources of his own may not evade his obligation to support his children by applying to that obligation the children's funds which he or another party holds as custodian. More precisely, we hold that the assets of a minor child held by any custodian under the UGMA may not be considered by the court in setting the level of the support obligation of a parent who is financially able to support his minor child, and we further hold that a custodian under the UGMA abuses his discretion and acts improperly if he expends funds from the custodial accounts for the purpose of fulfilling a parent's support obligation in lieu of that parent's making the payments out of his own income and assets. Because of the different nature of a parent's duty to support a competent child who has reached the age of majority and is attending college, we shall state a somewhat different rule to be applied in such situations which will be explained in greater detail below. We believe this is the only holding consistent with the terms and purposes of the UGMA and with the policies underlying our law of child support.

■■■ The primary basis of our holding is the paramountcy of a parent's obligation to support his or her minor children. We have described this duty as "well nigh absolute." *Commonwealth ex rel. Scanlon v. Scanlon,* 311 Pa.Super. 32, 40, 457 A.2d 98, 102 (1983). Both parents have an equal obligation to support their children in accordance with the capacity and ability of each to do so. *Conway v. Dana,* 456 Pa. 536, 318 A.2d 324 (1974); *Commonwealth ex rel. Hagerty v. Eyster,* 286 Pa.Super. 562, 429 A.2d 665 (1981); *Commonwealth ex rel. Mainzer v. Audi,* 266 Pa.Super. 122, 403 A.2d 124 (1979). A parent is required to sacrifice personal luxuries to provide his or her children with their needs. *Conway v. Dana; Commonwealth ex rel. Williams v. Williams,* 242 Pa.Super. 550, 364

A.2d 410 (1976); *Commonwealth ex rel. Ulmer v. Sommerville,* 200 Pa.Super. 640, 190 A.2d 182 (1963). The only limitation is that a support order should allow for reasonable living expenses of the paying parent and not be punitive or confiscatory. *Shank v. Shank,* 298 Pa.Super. 459, 444 A.2d 1274 (1982); *Dugery v. Dugery,* 276 Pa.Super. 51, 419 A.2d 90 (1980).

█ The above cases are clearly predicated on the principle that the burden of supporting minor children is to be borne by the parents, and that the courts will not allow a minor child to fend for himself when his parents are able to support him. In *Commonwealth ex rel. Byrne v. Byrne,* 212 Pa.Super. 566, 568, 243 A.2d 196, 197 (1968), we held that "[i]t is well established that a father of sufficient means must support his child ... and it is no defense that ... the child itself has independent means." Because section 5304(a) of the UGMA provides that a transfer of property to a custodian constitutes an irrevocable present gift to the minor, in applying the principle of *Byrne* we must consider the custodial property the property of the child, whatever its source.

█ Section 5310(a) of the UGMA, 20 Pa.C.S. § 5310(a), states a rule of construction common to many uniform acts, that the UGMA should be construed in a way which makes uniform the law of those states which have enacted it. The overwhelming majority of jurisdictions which have considered the issue have held that a parent who is able to support his children may not use custodial funds to discharge his support obligation, and that if the parents are financially able, courts should not consider custodial assets in setting the amount of support to be paid. In *Gold v. Gold,* 96 Misc.2d 481, 409 N.Y.S.2d 114 (Sup.Ct.1978), the New York court was faced with the issue "whether the assets of children [held by a parent as custodian under the UGMA] should be disclosed as relevant to the measure of the parties' child support obligations in an action for divorce." In denying such disclosure, the court held that evidence concerning the minor children's assets was not

relevant to the determination of child support because the parents had substantial resources from which they could provide support for their children. The court further held that the mother/custodian was "barred from using the children's funds for their support, since by reducing her child care obligations, she would receive an indirect financial advantage," and the UGMA does not allow the custodial funds to be used to benefit the custodian. 96 Misc.2d at 483, 409 N.Y.S.2d at 116. We endorse the New York court's declaration of sound policy underlying this rule:

Children have always been objects of special concern to the courts, entitled to protection from exploitation even by their parents. Absent evidence of need, children should not be forced unwittingly to use their funds or diminish their assets to support themselves.

*Id.* at 483, 409 N.Y.S.2d at 116.

The courts of California, Colorado, Connecticut, and Wisconsin have likewise held that the burden of support falls first on the parents, and that a parent/custodian financially able to support his children may not use custodial property to satisfy that personal obligation, because doing so would constitute using the funds for the parent/custodian's benefit rather than the children's. *See Newman v. Newman,* 123 Cal.App.3d 618, 176 Cal.Rptr. 723 (1981); *In re Marriage of Wolfert,* 42 Colo.App. 433, 598 P.2d 524 (1979); *Weisbaum v. Weisbaum,* 2 Conn.App. 270, 477 A.2d 690 (1984); *Erdmann v. Erdmann,* 67 Wis.2d 116, 226 N.W.2d 439 (1975). We are especially persuaded by the Connecticut court's concise response to an argument identical to that made by Mr. Sutliff:

The defendant argues in effect that the order in question simply confirms what the defendant is permitted to do under General Statutes § 45–104(b) [comparable to 20 Pa.C.S. § 5305(b)], which is part of the UGMA. This argument misses the mark. The purpose of General Statutes § 45–104(b) is to insulate the custodian from claims, by the minor or third parties dealing with the custodian, of improper management or unauthorized dis-

bursements. Its purpose is not to control the exercise of the court's discretion in a marital dissolution case; nor is its purpose, in such a case, to discharge the parent's primary duty of support. It must be read together with the statutory and common law provisions regarding that duty.

*Weisbaum*, 2 Conn.App. at 273–274, 477 A.2d at 693. As further support for its decision, the Connecticut court quoted the holding of the Colorado court in *Wolfert* that "[t]he section does nothing to relieve a parent of the separate duty to support his children.... This interpretation is unavoidable in light of the fact that the gift is irrevocable and gives the children an 'indefeasible [sic] vested legal title' to the gift." 2 Conn.App. at 274, 477 A.2d at 693, quoting *Wolfert*, 42 Colo.App. at 435–36, 598 P.2d at 526.

We also agree with the Colorado court that the intent of the UGMA is to "allow custodians to disburse funds whether or not the children are adequately supported." *Wolfert*, 42 Colo.App. at 435, 598 P.2d at 526. We therefore emphasize that our decision today does not in any way limit the sound discretion of any custodian to make any particular expenditure on behalf of the minor. Rather, we simply hold that custodians may not exercise this discretion in a way which would allow one or both parents to avoid expending their personal resources to meet their children's needs.

Husband's attempts to distinguish *Erdmann* and *Wolfert* are unsuccessful. Husband argues that *Erdmann* is inapposite because the fund involved therein was "court-created," and therefore the court could impose any conditions it wished. The fund in *Erdmann* was court-created in the sense that the divorce decree provided that, pursuant to an agreement between the parties, the father was to transfer certain securities to himself as custodian for the parties' children under the Wisconsin UGMA. Husband's argument ignores the fact that the "conditions" imposed by the court on the fund were primarily those contained in the UGMA. Although the court did suggest that the circumstances

under which the fund was created imposed additional duties on the father, the court was clearly referring to the father's role as *custodian* when it stated:

> [W]e see an obvious benefit to the appellant, *as custodian,* using the funds to make support payments that he would otherwise have had to make as parent out of his own funds. We do not see the benefit to the children deriving from the use of their property to make the payments that, if their fund was not used, their father would be required to make out of his income or assets.... [W]e hold that the fund created for the benefit of the children could not be used by this custodian to make payments he was ordered by the court, as their parent, to make for their support and maintenance.

67 Wis.2d at 124, 226 N.W.2d at 443 (emphasis added). We therefore believe that the principles set forth in *Erdmann* are applicable to the case sub judice.

Husband then attempts to distinguish *Wolfert* on the grounds that the case "involved the issue of the court's power" (Husband's Brief in No. 2423 Philadelphia 1982 at 17). This cryptic argument is based on the *Wolfert* court's statement that where the parents are financially able to support their children "the court may order that such gifts [UGMA funds] not be used to reduce the legal obligation of support." 42 Colo.App. at 436, 598 P.2d at 526. This is nothing more than a statement by the Colorado court of the obvious fact that it had the power to enter an appropriate order to enforce its holding that custodial funds may not be expended to reduce the parents' legal duty to support. The instant case involves the "power of the court" in the same way. Wife's very reason for bringing the orphans' court action was to invoke the power of the court to prevent a similar misuse of the custodial funds.

Husband cites as contrary authority several rulings of the Internal Revenue Service, two federal estate tax cases, and one state inheritance tax case, *Korschun v. Clayton,* 13 N.C.App. 273, 185 S.E.2d 417 (1971), in which the IRS and the several courts appeared to base their decisions as to the

applicability of income and estate taxes on their belief that a parent/custodian under the UGMA could use custodial funds to meet his or her support obligation. We believe these cases, which were focused on the applicability of taxing statutes to certain types of property rather than on the right of minor children to parental support, are outweighed by the persuasive force of the state decisions cited above. In resolving the taxation issues with which they were faced, the Tax Court and the North Carolina court did not grapple with the question whether a custodian's exercise of his power to expend custodial funds was *proper* under circumstances such as those presented in the instant case, where our courts in entering and enforcing an order of support seek to protect the rights of the children of a broken marriage. In *Korschun,* the North Carolina court stated that the applicable rule of construction was that "a law imposing an inheritance tax is to be liberally construed ... and all property fairly and reasonably coming within the provisions of such law may be taxed." 13 N.C.App. at 277, 185 S.E.2d at 420. Our decision in this case is governed by a far different principle, namely the principle that the duty of a parent to support his minor child is "well-nigh absolute," *Commonwealth ex rel. Scanlon v. Scanlon.*

In the instant case, a portion of the assets was held by Husband as custodian and the remainder was held by Fred K. Collins, a business associate of Husband, who is also a defendant in the orphans' court action. The question therefore arises (and is discussed by Husband and Collins in their brief) whether any distinction should be made between parent/custodians and third party custodians. We hold that the same principles apply regardless of the identity of the custodian and his relationship to the minor. The requirement that the custodian manage and expend the custodial property for the minor's benefit means that a parent/custodian may not expend the funds for his own benefit by applying them in lieu of his personal support obligation and that a third party custodian may not expend the funds for the benefit of another party, i.e. the parent, by knowingly

expending funds in such a way as to allow or facilitate the parent's avoidance of his primary support obligation.

The foregoing discussion has assumed that the children in question are under the age of eighteen and that their parents are financially able of providing for their support. In cases involving children over age eighteen who are still entitled to parental support, or children whose parents are not financially able to meet all their support needs, we hold that funds held by a custodian under the UGMA may play a limited role in determination and fulfillment of the support obligation.

Pennsylvania courts have often held that resources held by or for minor children in forms other than the UGMA may be considered in determining the children's needs and the parental support obligation when a parent's ability to provide for his children is in question. *See Commonwealth ex rel. Goichman v. Goichman,* 226 Pa.Super. 311, 316 A.2d 653 (1973); *Doelp v. Doelp,* 219 Pa.Super. 420, 281 A.2d 721 (1971). Both of these cases involved assets held in conventional trusts for the children. In *Goichman,* we stated that the rule allowing the income from such assets to be considered in determining the support obligation "is rooted in sound policy and ought to be extended, wherever equitable, in order to encourage the establishment of such trusts for the protection of children." 226 Pa.Super. at 319, 316 A.2d at 657. We believe that we should similarly encourage the establishment of funds and accounts under the UGMA for the benefit of children, in a way consistent with the principle that the primary burden of supporting minor children must rest on the parent.

 We also note that the drafters of the UGMA provided for a procedure by which the court may order a custodian to expend custodial funds to meet the minor's support, education, and maintenance needs. Section 5305(c) of the UGMA, 20 Pa.C.S. § 5305(c), provides:

The court on the petition of a parent or guardian of the minor, or of the minor if he has attained the age of 14 years, may order the custodian to pay over to the minor

for expenditure by him or to expend so much of or all the custodial property as is *necessary* for the minor's support, maintenance or education. (Emphasis added).

We believe that this section was intended to create a mechanism to ensure that a minor child whose assets are held by a custodian under the UGMA will be adequately supported even if his parents cannot provide fully for him from their own resources. Accordingly, we hold that where the court is unable to fashion a support order based solely on the parents' resources which meets all the properly determined support needs of a minor child or children without violating the principle that support orders should be nonconfiscatory, the court may treat the complaint for support as a petition meeting the requirements of 20 Pa. C.S. § 5305(c) and enter an appropriate order which ensures that the children's needs are met.

 We emphasize that § 5305(c) does not diminish the parents' primary duty to provide as much of the children's support as they can. Short of subjecting either parent to a confiscatory or punitive support order, the court must still direct that both parents appropriately expend their resources before turning to the custodial funds. We simply hold that the court need not risk imposing a confiscatory support obligation on a parent because the UGMA authorizes it to look to the custodial funds to meet those needs which the parents are unable to provide.

## EFFECT OF UGMA ON SUPPORT OF CHILDREN OVER 18

 We next turn to a consideration of the special circumstances surrounding the support of children over the age of eighteen who are attending college. Under Pa.R. C.P. 76, the age of majority is defined as eighteen years. Therefore, a child over the age of eighteen is considered an adult for purposes of a support action. The duty of parents to support a child who has reached the age of majority is different from the nearly absolute parental obligation with respect to a minor child. When a child reaches the age of

majority, a presumption arises that the duty to support the child ends and the burden shifts to the child to rebut the presumption, i.e. to demonstrate a need for support. *Verna v. Verna*, 288 Pa.Super. 511, 432 A.2d 630 (1981). Specifically, a parent is obligated to provide college expenses for a child over age eighteen only if the child is able and willing to pursue college studies successfully and the parent has sufficient assets and earning capacity to furnish such support without undue hardship. *Commonwealth ex rel. Grallnick v. Grallnick*, 279 Pa.Super. 347, 421 A.2d 232 (1980); *Commonwealth ex rel. Hanerkam v. Hanerkam*, 221 Pa.Super. 182, 289 A.2d 742 (1972).

However, the Pennsylvania UGMA does not require the custodian to transfer the custodial property to the minor outright until the minor reaches the age of 21. 20 Pa.C.S. 5305(d). Since the oldest of the Sutliffs' three daughters is now over age eighteen and attending college, we must consider what role custodial funds should play in the determination of the support obligation to be imposed on a parent of a child over eighteen attending college.[3]

We hold that the same principles which this court has applied to property of college-age children held in other forms may be extended to assets held by a custodian pursuant to the UGMA. We have always held that the independent resources of a college-age child, whether held in trust or otherwise, may be considered in determining the child's needs for support. *DeVergilius v. DeVergilius*, 329 Pa.Super. 434, 478 A.2d 866 (1984) (trust funds, real property, and children's employment considered); *Commonwealth ex rel. Schlesinger v. Schlesinger*, 231 Pa.Super. 284, 331 A.2d 694 (1974) (trust fund); *Commonwealth ex rel. Platt v. Platt*, 227 Pa.Super. 423, 323 A.2d 29 (1974) (child's employment income). In *DeVergilius*, we indicated that the

3. Although we vacate on jurisdictional grounds the order of the lower court which modified the support order based on Kimberly Sutliff's reaching age eighteen and attending college, *see infra* at 545–549, we believe that we should address the issue of the proper role of custodial funds in determining support for college-age children. *See infra* at 550–551.

availability of such resources to meet college expenses was especially relevant where there was a concern that imposing the college support obligation on the father would create an undue hardship.

Since the UGMA gives the custodian broad discretion to expend the custodial property for, inter alia, the minor's education, and empowers the court on appropriate petition to order the custodian to expend such sums as are necessary for the minor's education, there is certainly nothing in the UGMA which prevents us from extending the reasoning of *Platt*, *Schlesinger*, and *DeVergilius* to cases involving custodial property. Therefore, we hold that the court should consider assets held in custodial form, along with other assets of the child, in fashioning an equitable order which provides for the child's educational needs and calls upon the parents to contribute reasonably to those needs without imposing undue hardship. In other words, neither the parent nor the child should be forced to bear a disproportionate amount of the increasingly heavy burden of college expenses.

We believe this rule is based on two sound policies. First, the obligation of parents to support a child over the age of eighteen is less stringent than the nearly absolute duty to support a minor child. As we have noted above, the parental support obligation with respect to children over age eighteen is conditioned on a demonstration of need, and the parent is required to pay college expenses only to the extent that he can do so without undue hardship. The independent financial resources of the child therefore become relevant in determining whether he has met his burden of showing need.

Secondly, we take judicial notice of the fact that college students are customarily expected to make some personal contribution to their educational expenses. In awarding financial assistance, colleges generally consider the student's capacity to contribute to his expenses via employment and borrowing, as well as the resources available

from the parents. In the past, we have considered such student contributions in determining the student's need for parental support. *See DeVergilius* (summer and part-time employment); *Deiley v. Deiley*, 281 Pa.Super. 288, 422 A.2d 172 (1980) (scholarships and loans); *Platt* (summer employment).

## REMOVAL OF CUSTODIANS

Having set forth the governing principles of law, we turn to the question of their application to the appeals before us. We shall first consider the orphans' court action. Wife's original petition sought an accounting, the removal of Husband and Collins as custodians and the appointment of a bank as successor custodian, and the reimbursement of the custodial accounts for monies improperly expended. Husbands' cross-appeal seeks to recover attorney's fees from Wife on the grounds that the orphans' court action was instituted in bad faith and in a vexatious manner. In her brief, Wife states that she is satisfied with the information furnished by the custodians in connection with this action and is therefore no longer pursuing her request for an accounting.

We adopt the trial court's findings of fact, as there is little dispute concerning the controlling facts. However, we hold that the trial court misapplied the law to these facts when it concluded that the custodians had not acted improperly. Husband made three-fourths of the court-ordered support payments for Kimberly, Julia, and Laura from their custodial accounts at a time when he was earning a six-figure income and his net worth was nearly three million dollars. He also drew upon the children's funds to pay their clothing bills and such trivial items as children's books costing less than $10. Husband admitted at the hearing that he could have easily made the support payments and met the other expenses from his own resources (N.T. 25–26, Trial Court Opinion at 5). For the reasons amply explained above, we hold that this constitutes a breach of Husband's duty as custodian. It is beyond question that he was able

to meet the support needs of his minor children from his own resources and was under a legal duty to do so. By using the custodial funds to evade his primary obligation to support his daughters, he used the custodial funds for his own benefit and thereby abused his discretion as custodian. *Newman; Wolfert; Weisbaum; Gold; Erdmann.*

With respect to custodian Collins, we agree with the contention of Husband and Collins in their brief that the record does not support a finding, and the court made no finding, that Collins expended any sums for the support of the three daughters. At the time of the hearing in the orphans' court action,[4] the only expenditures made by custodian Collins were for college expenses for Gregory M. Sutliff, who was over age eighteen at the time the expenditures were made. Gregory M. Sutliff was not included in the support orders involved in these appeals and was not involved in any other support proceedings between the parties. No issues pertaining to Gregory M. Sutliff's support are before this court. Therefore, there is no competent evidence to support a finding that Collins acted improperly.

Although we hold that Husband's actions breached his duties as custodian and supporting parent, we do not believe that the removal of Husband as custodian is appropriate at this time. Section 5308(e) of the UGMA, 20 Pa.C.S. § 5308(e), which provides for removal of the custodian "for cause shown," does not define "cause" or otherwise suggest the nature or level of misconduct which is sufficient to warrant removal. Case law sheds little additional light on the question. *See, e.g., In the Matter of Muller v. Muller,* 18 App.Div.2d 1067, 1067, 239 N.Y.S.2d 519, 520 (1963) (court simply repeats statutory language "for cause

4. We note, though, that the record in the modification of support proceeding, No. 3208 Philadelphia 1982, indicates that checks for Kimberly Sutliff's college tuition and expenses were drawn on Collins' custodial account on August 30, 1982. Since these expenditures took place after the entry of the lower court's decree in the orphans' court action allowing the use of custodial funds for support, we believe they cannot form the basis of a finding that Collins engaged in improper conduct. A custodian should not be held to breach his duty when he acts in a manner expressly permitted by a valid decree of a court.

shown"; holds that "the conclusory allegation that the respondent has threatened to remove the custodial funds and convert them" does not establish cause for removal). Prior to our decision today, there was no controlling legal precedent in Pennsylvania holding Husband's conduct improper. The statute grants broad discretion to the custodian in language containing ambiguities which could be construed as allowing Husband to act in the way he did. Husband's highly skilled counsel supports his position with a well-reasoned argument which we cannot dismiss as frivolous. Nothing in the record entitles us to conclude that Husband did not hold a good-faith belief that his conduct was permissible under the UGMA.[5] A distinguished judge of one of our trial courts agreed with him. We will not impose a requirement of clairvoyance on a custodian. Hence, the petition to remove Husband and Collins as custodians is denied, without prejudice to the right of any appropriate party to petition the court under section 5308(e) of the UGMA should the custodians engage in any improper conduct subsequent to the filing of this opinion. In other words, our holding as to the duty of a custodian under the UGMA is to be given prospective effect only.

## SURCHARGE ON CUSTODIANS

[26] For similar reasons we also believe the custodians should not be surcharged for the amounts already expended. Section 5306(e) of the UGMA provides that a custodian who does not receive compensation for his services "is not liable for losses to the custodial property, unless they result from his bad faith, intentional wrong-doing or gross negligence, or from his failure to maintain the standard of prudence in investing the custodial property provided in this chapter." We have determined that Husband invested the custodial assets prudently and that his other actions cannot be characterized as "bad faith, intentional wrong-doing or gross negligence." Once again, the appropriate aggrieved

5. We also agree with the lower court that Husband and Collins managed the custodial funds in accordance with the standard of financial prudence set forth in 20 Pa.C.S. § 5305(e).

party may of course seek to surcharge the custodians for any improper expenditures made subsequent to our decision.

## ATTORNEY'S FEES

Finally, we deny Husband's request for attorney's fees. It should be self-evident from our holding that we do not believe that Wife commenced the orphans' court action in bad faith or in a vexatious manner. Husband argues that denial of his request for attorney's fees will cause the custodial accounts to suffer as they will be forced to bear financial burden of this litigation. Although we recognize that section 5306(a) of the UGMA, 20 Pa.C.S. § 5306(a), provides that "[a] custodian is entitled to reimbursement from the custodial property for his reasonable expenses incurred in the performance of his duties," it is not at all clear that that section encompasses the custodian's costs of defending against charges that he mismanaged the custodial property. Furthermore, we do not believe that section 5306(a) should be construed to limit the court's power to make an appropriate order to protect the custodial property. Husband is able to pay the costs of this litigation from his own assets, and we direct him to do so.

## SUPPORT ACTION

Turning to the support action, we must first grapple with a jurisdictional question. We have before us separate appeals from a support order and from an order modifying the support order. The latter order was entered in the lower court after the appeal from the former order was taken. Wife, appellant in No. 3208 Philadelphia 1982, the appeal from the modified order, contends that for this reason the court was without power to modify its earlier order.

The proceedings which created this problem are somewhat irregular and protracted. Wife filed a complaint for support on November 4, 1981. The court entered an interim order on December 3, 1981, providing for $400 per week support for the children and none for Wife. Hearings were

then held on three dates in March and April 1982. No further action was taken by the court or the parties until September 23, 1982, when Husband filed a petition to modify the December 3 order. His modification petition averred, inter alia, that Kimberly was attending college and had consented to the use of her custodial funds to pay college expenses. On October 4, 1982, the court entered a support order awarding $300 per week to Wife and $600 per week to the children. It appears from the record and the trial court's opinion that this order was entered as an original order and the modification petition was not considered. However, on October 29, 1982, the court held a hearing on the modification petition.

On November 1, 1982, before the court took further action, the parties cross-appealed the October 4 order at Nos. 3117 and 3168 Philadelphia, 1982. Nevertheless, the court proceeded on November 5, 1982 to enter the modified order which Wife has appealed at No. 3208 Philadelphia 1982.

The foregoing chronology reveals that the court below attempted to modify a support order after an appeal had been taken and that its action in modifying was based on a petition to modify an earlier order which had already been supplanted.

We are compelled to conclude that the court acted beyond its power in modifying its October 4, 1982 order. Generally, the taking of an appeal divests the lower court of jurisdiction. Pa.R.A.P. 1701(a). This rule has been applied to modifiable orders as well, such as alimony, *Morelli v. Morelli*, 316 Pa.Super. 54, 462 A.2d 789 (1983), and child custody, *Ferencak v. Moore*, 300 Pa.Super. 28, 445 A.2d 1282 (1982). Therefore, the court was without jurisdiction to modify its October 4, 1982 order unless the case falls within one of the exceptions enumerated in Pa.R.A.P. 1701(b) and (c). We hold that it does not. Rule 1701(b) allows the lower court to grant reconsideration of an order which has been appealed. It is not clear to us that a petition to *modify* a support order based on changed cir-

cumstances is the same as a request to reconsider the order. "Reconsideration" implies asking the court to reassess the facts and circumstances on which the prior order was based. However, even if we assume arguendo that the two are equivalent for Pa.R.A.P. 1701 purposes, the rule allows reconsideration only if a timely application for reconsideration is filed and the court enters an order granting reconsideration within thirty days. In the instant case, no timely request for reconsideration was filed. Husband's September 23, 1982 petition to modify the December 3, 1981 order was rendered moot by the court's order of October 4, 1982. No petition to modify the October 4, 1982 order, based on changed circumstances since its entry, was filed.[6] Furthermore, the court's November 5, 1982 modification order is dated beyond the thirty-day period, and no earlier order expressly granting reconsideration was entered.

■ Husband argues that the trial court's action is permissible under Rule 1701(c), which allows the trial court to act with respect to certain items or issues where the appeal was taken only with respect to other issues, i.e. issues collateral to those involved in the modification request. Husband cites *Commonwealth v. Mazzocone*, 8 D. & C.3d 309 (C.P. Chester Co. 1978) in support of his position. *Mazzocone*, however, involved a question of the court's power to modify a support order when an appeal was pending only as to arrearages. The court held that it could modify the order because the issue of prospective payments was distinct from and collateral to the issue of arrearages. In the instant case, though, the appeal is not so narrow in scope. The parties' cross-appeals raise numerous issues, effectively placing the entire order, not just a portion thereof, before the appellate court. The child support issues raised in Husband's petition to modify are clearly not separate from or collateral to the issues involved in the appeals from the court's October 4, 1982 order. *See Litt v. Rolling*

6. Based on this fact, we would be justified in finding the court without jurisdiction to enter the November 5, 1982 order even if no appeal had been taken.

*Hill Hospital,* 293 Pa.Super. 97, 100 n. 2, 437 A.2d 1008, 1010 n. 2 (1981) (Pa.R.A.P. 1701(c) intended "to prevent a pending appeal from affecting 'separate disputes between other parties or involving separate subject matter.'" (citation omitted)).

Since the trial court was without jurisdiction to enter its November 5, 1982 order, we must vacate the order on these grounds.

The cross-appeals from the October 4, 1982 support order, though, are properly before this court.[7] Husband is the primary appellant; he contends that Wife is not entitled to receive support because she withdrew from the marital domicile without legal cause, because Husband has established grounds for a fault divorce, and because Wife is economically independent and able to support herself. He further maintains that the court erred in entering a support order "in favor of children who are independently wealthy and who are economically independent," (Husband's Brief in No. 3117 Philadelphia 1982 at 18), and that the court failed to properly consider the actual needs of the children and Wife's ability to contribute to their support. Wife's cross-appeal consists of a contention that the October 4, 1982 support order should be made retroactive to December 3, 1981, the date she filed her complaint for support.

■ With respect to the issues surrounding the support of Wife, we agree with the trial court's findings that Wife had sufficient legal cause to leave the marital home and that Husband did not establish that he was entitled to a fault divorce.

■ We do not agree with Husband that Wife's income and other resources disqualify her from receiving any support. Although Wife earned $26,000 in 1981 working only part-time, the court clearly took this fact into consideration and nevertheless found that she was entitled to addi-

7. If a timely request for reconsideration had been properly granted by the trial court, it would have rendered the appeals from the October 4, 1982 order null and void. Pa.R.A.P. 1701(a).

tional support to maintain the high standard of living which the parties enjoyed before their separation. We agree with the trial court as a matter of legal principle and economic judgment. Husband is under a duty, to the extent he is able, to maintain his family's standard of living at a level consistent with their station in life before the separation. *Commonwealth ex rel. Goichman v. Goichman; Dunbar v. Dunbar*, 291 Pa.Super. 224, 435 A.2d 879 (1981): *Commonwealth ex rel. Levinson v. Levinson*, 99 Montg.Co.L.R. 199 (C.P. Montg.Co.1975). Wife's earnings are a far cry from Husband's six-figure income, and her working hours were limited for legitimate reasons related to the care of her children. We are therefore unable to conclude from the record before us that Wife is not entitled to any support or that Husband is unable to pay.

However, we cannot affirm the trial court's order as to Wife's support or the children's, because the order in its entirety is based on an error of law. The trial court entered its support order subsequent to its decision in the orphans' court action. Both matters were heard before the same judge. In its opinion in the support action, the court stated, "Defendant's right to the use of custodial funds for the children's support was resolved by this court in *Sutliff v. Sutliff and Collins*, No. 107 Orphans 1982." The court clearly took the custodial property into consideration in formulating the support order. Husband goes so far as to argue in his brief that because the children hold substantial assets, the support order is excessive and should be reduced or terminated.

Both the trial court's and Husband's positions are entirely contrary to the principles we have set forth above concerning the proper role of the children's custodial funds and other assets. Husband has a primary duty to meet his support obligations out of his own resources, and he clearly has ample income and assets to do so. The court erred in taking the children's custodial property into consideration in setting the amount of support, and in holding that the custodial property was an acceptable source of Husband's

support payments. Since the court's belief that the children's assets should enter into the support calculation may have affected its judgment of Husband's ability to pay or of the aggregate support needs of the household consisting of Wife and the children, that portion of the order providing for the support of Wife may also have been tainted by this improper consideration. In this regard, the reasoning of the Appellate Court of Connecticut in *Weisbaum* is relevant:

> The effect of the court's order here was to permit the defendant to discharge from the custodial funds those other obligations which the court imposed on him. It may be that upon a rehearing the court will impose the same obligations without the access to those funds; but on this record we cannot be certain of that. It is appropriate, therefore, that the rehearing which we order embrace those obligations as well.

*Weisbaum v. Weisbaum,* 2 Conn.App. at 274, 477 A.2d at 693. Therefore, we reverse and remand the entire support action to the trial court for proceedings consistent with this opinion.

■■■■■ Because we wish to afford the trial court great latitude on remand to fashion a just and equitable order, we will not grant at this time the relief Wife requests in her cross-appeal, namely the amendment of the support order to make it retroactive to the date of filing of the complaint. However, we instruct the trial court to reconsider on remand the effective date of any order it enters. There is a sound policy favoring retroactivity in most cases, because the party entitled to support should not be penalized for having to resort to time-consuming court proceedings, *Commonwealth ex rel. Kinsey v. Kinsey,* 277 Pa.Super. 156, 419 A.2d 708 (1980). Our rules of procedure provide that a support order shall be effective from the date of the complaint unless the order states otherwise. Pa.R.C.P. 1910.-17(a). Moreover, we have indicated in prior decisions that it is preferable for the trial court to state on the record its reasons for denying retroactivity if it does so. *Kinsey;*

*Commonwealth ex rel. Bishop v. Bishop,* 234 Pa.Super. 600, 341 A.2d 153 (1975). In the instant case, the trial court did not provide us with such a statement of its reasons for denying retroactivity. We instruct the court to state on the record its reasons should it choose on remand not to make the order retroactive to the date of the complaint.

With respect to the appeal at No. 3208 Philadelphia 1982 from the court's November 5, 1982 order in the support action, we have held that the trial court was without jurisdiction to enter that order and have accordingly vacated it. Nevertheless, we are compelled to comment briefly on certain substantive aspects of that appeal because as a practical matter, the court below will be or may become aware when considering our remand of certain facts contained in Husband's petition for modification. In addition to averring that the couple's oldest daughter Kimberly had begun attending college since the entry of the December 3, 1981 support order, Husband's petition refers to and incorporates as exhibits two letters signed by Kimberly. Exhibit A is a letter "To the Court" dated August 30, 1982 which states in pertinent part:

> Please be advised that after much consideration of all the factors involved, I have decided that my interests are best served by my receiving funds for my support directly from the custodians of my funds. I hereby withdraw my request that my mother receive these funds for my support.

Exhibit B is a letter dated August 26, 1982, addressed "Dear Father," which reads in part (emphasis added):

> I am told by my attorney that you will see that my college tuition and other expenses are paid only if I request that you do this out of my custodial funds. *Having no choice in the matter,* I hereby make such a request.

The circumstances surrounding these letters, especially the letter of August 30, were the subject of much hotly disputed testimony at the hearing. Wife's position is that Kimberly was coerced into signing the August 30 letter as a

condition of receiving her college tuition money from Husband. Kimberly testified that the letter was presented to her by her father at a last-minute meeting concerning her tuition payment. She further testified that she believed she would not receive the money if she did not sign the letter, that she did not wish to sign it, and that she was surprised by the conditions Husband was suddenly attempting to impose.

Husband contends, on the other hand, that Kimberly made her own decision to sign the letter, and that she did not need to do so to obtain money for college. He now argues that these letters constitute an effective revocation by Kimberly of her prior written consent, pursuant to Pa.R.C.P. 1910.3(4), to the support action commenced by her mother.

The trial court appears not to have made any findings with respect to this dispute, and it is here that our concern lies. The trial court simply stated in its opinion that "the circumstances surrounding the execution of that letter [the August 30 letter] are such that the real reason for its execution is not clear." Since the court proceeded to enter an order reducing the prior support order and providing that Kimberly's college and incidental expenses be paid out of her custodial accounts, we must assume that the court further believed that the exact circumstances surrounding the execution of the letters was irrelevant. Presumably this was because the court, adhering to its earlier conclusion in the orphans' court action, believed that Husband was free to pay Kimberly's support and education expenses out of her custodial property regardless of whether the court so ordered or Kimberly so requested.

Based on our holding in the appeal from the orphans' court decision, we must state emphatically that such is not the case. In considering on remand the amount of support to be awarded to Kimberly, whom we must now recognize as over age eighteen and attending college, the trial court shall apply the principles discussed above with respect to the role of custodial funds in determining and

satisfying the support obligation to be imposed on a parent of a child over age eighteen and attending college. In making such a determination, the wishes of the child are relevant and may be considered. *See* section 5309(a) of the UGMA, 20 Pa.C.S. § 5309(a), entitling a minor over age fourteen to petition the court for an accounting by the custodian, and section 5305(c), allowing a minor over age fourteen to petition the court to order the custodian to pay over such funds as are necessary for the minor's support, maintenance, and education. However, this means that if there is a dispute as to the child's wishes, the court must engage in the necessary factfinding to determine what they actually are. The trial court shall conduct the proceedings on remand in accordance with these principles.

Having considered all issues properly raised by the parties in these appeals, we enter the following dispositive order:

The order of August 5, 1982 in No. 107 Orphans' 1982 is affirmed, but the custodians shall conduct themselves in the future in a manner consistent with this opinion. The order of October 4, 1982 in No. 859 Support 1981 is reversed and remanded for further proceedings consistent with this opinion. The order of November 5, 1982 in No. 859 Support 1981 is vacated.